MARY LEE CARRINGTON *v.* STATE OF MARYLAND

[No. 210, Initial Term, 1967.]

*Decided May 29, 1967.*

The cause was argued before ANDERSON, MORTON, ORTH, and THOMPSON, JJ., and O'DONNELL, J., Associate Judge of the Eighth Judicial Circuit, specially assigned.

*Benjamin L. Brown* for appellant.

*Fred Oken, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *James F. Garrity, Assistant State's Attorney,* on the brief, for appellee.

PER CURIAM.

On May 17, 1966, appellant was convicted of manslaughter in the Criminal Court of Baltimore before Judge James A.

Perrott, presiding without a jury. She was sentenced to imprisonment for a term of not more than 6 years.

There are two questions presented on this appeal:

1) Did the trial court err in admitting in evidence the oral statements of the appellant?

2) Did the trial court err in finding that the homicide was neither accidental nor in self defense?

On January 19, 1966 Sergeant Gilbert Derrenberger of the Baltimore City Police Department responded to a call at 710 Druid Hill Avenue. He observed "a couple large spots of blood outside the front door," which was ajar. He saw appellant in the front room. He asked appellant what happened and she replied, "Come on in * * * I got tired of him beating on me, pushing on me." At this point at the trial the issue of voluntariness was explored. The police officer testified that neither he nor anyone in his presence made any promises to her nor used any force or violence on her and that her statements were free and voluntary. On cross examination he said appellant appeared to be intoxicated, her speech was slurred and she smelled "in my estimation of wine." He did not have the opportunity to tell her that anything she said would be used against her because she "blurted out her story." The appellant proffered no testimony on the question of voluntariness and the statement was admitted in evidence. Appellant told the officer she was tired of being beat on and that the deceased had kicked her. She waited until he went upstairs where he laid on the bed and went to sleep. She got a knife from the kitchen, went upstairs and stabbed him but did not know on what part of the body. The autopsy report was admitted in evidence by stipulation. The opinion of the medical examiner was that the deceased died "as a result of a massive hemorrhage following the cutting of a large artery of the left leg as part of a stab wound of that leg." The wound was located on the anterolateral aspect of the left lower leg, at approximately the junction of the superior and middle thirds of that leg and located specifically at a point inferior to the inferior-most portion of the left patella. The alcohol in his blood was .19%. The officer went upstairs and found the deceased across the bed with his feet

on the floor in a large pool of blood. The appellant voluntarily went to the kitchen, got a knife from a shelf in a cabinet and gave it to the officer. She said she had washed the knife, dried it and replaced it in the cabinet after the stabbing. The officer further testified that he did not attempt to take a written statement from her when she was taken to the police station because of her condition. The next morning he advised her of her right to counsel and on his further advice she said she would wait for an attorney and interrogation was not pursued. At the conclusion of the State's case the court granted a motion for judgment of acquittal of murder in the first degree and murder in the second degree and denied a motion as to manslaughter.

The appellant testified that she had been living with the deceased for eight years. She admitted stabbing him. There had been an argument over money and the deceased hit her. She said, "I saw him going to come back, hit me in the face. I grabbed the knife. I thought I hit him on the arm. He walked away from me. The officer came so quick * * *." (The police apparently were called by the landlady who saw the deceased on the bed. The landlady did not testify.) Appellant further testified that she got a clean sheet from a trunk and gave it to the officer at his request. She said that they had been drinking in the early part of the afternoon but she was not drunk and was not "high," that they "didn't have but a fifth between four people. When he went across the street to pay the man this money, he gave him half of it." On cross examination in answer to questions going to her credibility, she admitted to three previous convictions of assault, one for cutting the deceased with a razor, the others for stabbing two other men.

We find no error in the admitting in evidence of the oral statements. The test by which the court is to measure the admissibility of the statement is whether the statement was made by the appellant freely and voluntarily and at a time when she knew and understood what she was saying. *Koprivich v. State,* 1 Md. App. 147 (1967); *Cooper v. State,* 1 Md. App. 190 (1967) and cases cited. There is no contention that the statement was the product of force or threats or the result of any

promises or inducements whereby the appellant may have been led to believe that there might be a partial or total abandonment of prosecution. There is no allegation of denial of counsel after request so *Escobedo v. Illinois,* 378 U. S. 478 (1963) does not apply. Nor is she within the ambit of *Miranda v. Arizona,* 384 U. S. 436, as *Miranda* is available only to persons whose trials had begun as of June 13, 1966, the date *Miranda* was decided. *Meadows v. Warden,* 243 Md. 710 (1966); *Cooper v. State, supra.* But even under *Miranda* persons not in custody or under restraint may be questioned, and volunteered statements or "blurts" are admissible. *Campbell v. State,* 244 Md. 363 (1966). The only question here is whether the appellant knew and understood what she was saying. The lower court found that she did and we agree. She had been drinking "the early part of the afternoon" and when the police arrived, shortly after the stabbing, although her speech was "slurred" and she smelled of wine, she told them what had happened clearly and coherently. She got the weapon from the kitchen to give to the police and explained that she had washed it, dried it and put it in a cabinet. She got a clean sheet out of a trunk at the request of the police. Confessions have been held to be admissible despite evidence that the accused was probably under the influence of drugs [*Bryant v. State,* 229 Md. 531 (1962); *Campbell v. State,* 240 Md. 59 (1965)], that he was frightened, hysterical, depressed and had been drinking (*Mundell v. State,* 244 Md. 91 (1966) and that he was "sick" (*Cooper v. State, supra*). The determination of admissibility of a confession is left largely to the trial court, and it will not be disturbed on appeal unless there was manifest abuse of discretion. *Bryant v. State, supra; Ralph v. State,* 226 Md. 480 (1961); *Grammer v. State,* 203 Md. 200, cert. den. 347 U. S. 938. See also *Hadder v. State,* 238 Md. 341 (1965). We find no such abuse here.

We find no error in the finding of the trial court that the homicide was neither accidental nor in self defense. Even assuming that the testimony of the appellant was sufficient to support the allegation of accident or self defense, the credibility of witnesses is for the trier of facts to determine and the trial

358

court was under no obligation to believe her. *Duffy v. State,* 243 Md. 425 (1966); *Campbell v. State (supra).*

In judging credibility, the trial court may disbelieve exculpatory statements made by the defendant. *Bird v. State,* 231 Md. 432 (1963). The findings of fact of the trial judge will not be disturbed unless clearly erroneous. Maryland Rule 1086. We think there was legally sufficient evidence to sustain the conviction.

*Judgment affirmed.*