## JOHNNY MACK BROWN v. STATE OF MARYLAND

[No. 129, September Term, 1967.]

---

314

*Decided March 6, 1968.*

The cause was argued before Murphy, C. J., and Anderson, Morton, Orth, and Thompson, JJ.

*Bernard A. Greenberg* for appellant.

. *Bernard L. Silbert, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Alan B. Lipson,*

*Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

MURPHY, C. J., delivered the opinion of the Court.

The appellant, Johnny Mack Brown, was convicted of murder in the first degree on March 7, 1967 by the court sitting without a jury and sentenced to life imprisonment in the Maryland Penitentiary. He contends on this appeal (a) that his confession was secured in violation of the principles enunciated in *Miranda v. Arizona,* 384 U. S. 436, and was thus improperly admitted into evidence at his trial, and (b) that certain statements made by a police officer to the appellant's father while appellant was in police custody were also erroneously admitted into evidence at his trial, and (c) that the evidence was insufficient to support the conviction.

There was evidence adduced at the trial from which the trier of fact could find that in the late afternoon of September 26, 1966, Gail Jefferson, age fourteen, was shot with a .22 caliber bullet while playing in the courtyard of an apartment project and died shortly thereafter; that at 8:31 p.m. that same day, the appellant phoned the police stating: "I'm Johnny Mack Brown, and I want to give myself up for shooting that girl today. I am walking from Fayette and Broadway to 302 North Ann Street, my mother's house"; that the police, at 8:35 p.m., arrived at appellant's mother's home, at which time the appellant, in company with his father, walked up to the police and stated: "I'm the one that called. I'm the one that did the shooting"; that appellant then gave the officers a .22 caliber bullet, after which he was taken to police headquarters and placed in a cell; and that at 8:55 p.m. he was taken to the Sergeants' Room for interrogation where, within a short time thereafter, he gave police a written statement to the effect that he had shot Gail Jefferson with his .22 caliber rifle from the window of a second floor apartment of a friend's home because the victim had teased him earlier in the day.

Appellant contends that his statement was improperly admitted at the trial over his objection since the State failed to prove that he had voluntarily, knowingly and intelligently waived

his constitutional right to remain silent and to have counsel to represent him.

The record discloses that appellant was interrogated by Detective Donald Raley and Sergeant Carl Zamerelli in the presence of two other officers. Raley testified that before any interrogation began appellant said that, "he wanted to tell us what had happened," and also said, "I want to get it off my chest." An objection to the admission of these oral statements was made by appellant and the objection was sustained by the court. Detective Raley was then asked, "What was the next thing that was said or done?" He answered, stating that, "We had the typewriter and what not prepared and we prepared to take a statement." Raley further testified that, "prior to taking any statement from him," appellant was told of his right to remain silent, that anything he said would be used against him in court, that he could have a lawyer present if he cared to have one, and that if he could not afford an attorney, one would be secured for him. Detective Raley was then asked:

> "Q. What happened if anything after you told the defendant, after you gave him this information?
> "A. He told us what had happened.
> * * *
> "Q. Before you started to get anything, was there any other discussion on any other matter preliminary to taking down the statement on paper?
> "A. Well we asked him some questions, some little background what had happened."

On cross-examination, Detective Raley was asked:

> "Q. In fact after you finished advising him of his rights you didn't ask him whether or not he wanted a lawyer, did you?
> "A. We asked him already, yes.
> "Q. You did?
> "A. We asked him if he wanted a lawyer and he said he wanted to tell us what—"

At this point, the State objected and Detective Raley did not complete his answer. The court then adjourned for lunch.

On re-direct examination, Raley testified that he had no doubt that the appellant understood the *Miranda* warnings. Appellant objected to the answer and the objection was sustained by the court. Raley was then asked:

"Q. Did the defendant ask any questions after the warnings were given, * * *?
"A. The defendant stated he wanted to give—"

An objection to the answer was sustained by the court.

Raley was thereafter asked on re-direct:

"Q. What if anything did the defendant say as you gave him these warnings?
"A. Nothing. We went ahead with the statement with the exception he wanted to give a story, his side of the story."

As the State's re-direct examination of Detective Raley progressed, it sought to show that in the preliminary part of appellant's written statement, he expressly acknowledged that he understood the *Miranda* warnings, and nevertheless wanted to tell the police what had happened. An objection to this line of testimony was sustained by the court. Thereafter, Raley was asked:

"Q. Did Mr. Brown at any of those times prior to, during or subsequent refuse to give you any information concerning this offense?
"A. No, sir.
"Q. Did Mr. Brown question you as to what you meant after you had given him the warnings you already testified to?
"A. No."

On re-cross examination of Detective Raley, he testified that appellant was asked, "if he wanted an attorney present at the time he was talking to us." The record does not reveal what, if any, response appellant made to that question.

Appellant testified as to the voluntariness of his statement, and was asked:

"Q. What were you told by the police if anything?

"A. They asked me if I—I ain't had to say nothing, I could remain silent, if I want I could have a lawyer right there where I was, let him hear what I was telling them.

"Q. Speak clearly?

"A. They told me I could remain silent and if I don't want I ain't have to say nothing without a lawyer would be there to listen to hear what I say."

To the question of "whether he knew that he could have a lawyer right then and there," appellant answered in the negative but the court sustained an objection to this answer. Appellant was then asked by his counsel:

"Q. What did you say if anything after you were informed of your rights?

"A. I didn't say anything. I just started telling them what had happened."

On cross-examination, the appellant testified:

"Q. Mr. Brown, it was your intention all along to turn yourself in and to tell the police about what had happened, was it not?

"A. Yes."

Appellant's statement was then offered in evidence. The appellant objected on the ground that the evidence failed to show a knowing and intelligent waiver of his right to remain silent and to have a lawyer present to represent him. The court concluded that the statement was admissible in evidence, stating:

"THE COURT: I find that any indecision about what was told to the defendant by Detective Raley has been answered conclusively by the testimony of the defendant himself who certainly corroborates Detective Raley when he said, yes, the police told me among other things I could have a lawyer right there with me. The defendant stated I didn't say anything after

I was informed of my rights. Then I just told them what happened.

* * *

"THE COURT: I hold that the police in this case acting through Detective Raley at that time clearly told the defendant of his existence of his rights under Miranda together with the other information according to the testimony pertaining to the fact that no promises were made, no inducements were made, no coercion, no violence exerted and it seems to me to be very clear that the police had met affirmatively the burden upon them placed on them by the *Miranda* case."

The written statement, as read into evidence, contained by way of introductory matter a recitation of the details of the particular crime which the officers were investigating, together with the fourfold *Miranda* warnings, after which appellant was asked, "Johnny, do you understand what I just said?" to which he replied:

"Yes, I understand what you said; & I want to tell you just what happened."

We have no difficulty in concluding that appellant was afforded all the constitutional warnings to which he was entitled under the *Miranda* decision, including advice in clear terms that he had a right to have counsel present during the interrogation. But as *Miranda* makes clear at page 475, if after such warnings have been given, custodial interrogation is undertaken without the presence of an attorney, and a statement is taken, "a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." Equally plain from *Miranda* is the flat holding at pages 475 and 479 that no evidence obtained as a result of a custodial interrogation can be used against an accused unless and until the prosecution demonstrates a waiver of his constitutional rights within the meaning of *Johnson v. Zerbst,* 304 U. S. 458, a case which holds that waiver of a fundamental constitutional right is ordinarily "an intentional relinquishment or abandon-

ment of a known right or privilege," the determination of which "must depend in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." Within this framework, the *Miranda* court, in the course of its opinion, articulater further guidelines governing waiver of an accused's right against self-incrimination and to retained or appointed counsel at the interrogation, namely:

(1)   "An express statement that the individual is willing to make a statement and does not want an attorney followed closely by a statement could constitute a waiver. But a valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained * * *." (at page 475)

(2)   "Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver." (at page 475, quoting from *Carnley v. Cochran,* 369 U. S. 506)

(3)   "That the accused's 'failure to ask for a lawyer does not constitute a waiver'." (at page 470)

(4)   "The mere fact that he [the accused] signed a statement which contained a typed-in clause stating that he had 'full knowledge' of his 'legal rights' does not approach the knowing and intelligent waiver required to relinquish constitutional rights." (at page 492)

It is against this background that we consider whether appellant knowingly and intelligently waived his *Miranda* rights before making his statement. The record discloses that appellant was seventeen years of age when the crime was committed and had a ninth grade education; that on two occasions shortly after the crime—at a time when he was not in police custody —appellant voluntarily contacted the police to tell them that

it was he who had shot the girl and that he wanted to surrender himself. It further appears that appellant's father advised him to tell the police what had happened, and from appellant's own testimony it is clear that he intended from the outset to do so. His written statement containing the incriminating admissions was not spontaneously offered, however, but rather was secured following a brief "custodial interrogation" within the meaning of the *Miranda* decision. And while it appears clear from appellant's own testimony that he understood that he had a right to remain silent and to have counsel present during the interrogation, the testimony does not show that he expressly waived these rights. On the contrary, the testimony shows only that after the warnings were given to him, appellant said nothing but promptly proceeded to give police an incriminating written statement. In finding that appellant's statement was admissible as having been secured in conformity with the dictates of the *Miranda* decision, the trial judge did not, at the time of such ruling, have in evidence the express acknowledgement of the appellant, contained in his written statement, to the effect that he understood the import of the *Miranda* warnings and nevertheless wanted to make a statement.

As heretofore noted, the *Miranda* court held flatly that "a valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained," nor will "failure to ask for a lawyer * * * constitute a waiver." But the ultimate determination of whether the appellant knowingly and intelligently waived his *Miranda* rights before making a statement is governed, in the final analysis, by whether the particular facts and circumstances surrounding the case are such as to demonstrate an intelligent and intentional relinquishment or abandonment of a known right or privilege. *Carnley v. Cochran, supra; Johnson v. Zerbst, supra.* Thus, in *United States v. Hayes,* 385 F. 2d 375 (4th Cir.), it was held, in effect, that an express statement by an accused undergoing custodial interrogation that he understood his *Miranda* rights, and nevertheless wanted to make a statement, is not an essential link in the chain of proof of waiver. In that case, the court held that "strong and unmistakable circumstances" may, upon occasion,

establish an effective equivalent to an express waiver of an accused's *Miranda* rights,[1] and that to constitute such a waiver "the attendant facts must show clearly and convincingly that he [the accused] did relinquish his constitutional rights knowingly, intelligently, and voluntarily * * *." The *Hayes* court, in finding that the accused had effectively waived his *Miranda* rights, considered a number of factors in reaching its conclusion, among them the fact that the defendant was permitted to make a telephone call prior to his interrogation, that there was no allegation of physical or psychological coercion, that the defendant was healthy and alert and did not appear unnerved, that he was fully advised of his constitutional rights and did not deny that he understood them, and that there was no showing that his intellectual endowments were in any way impaired.

In the present case, as in *Hayes,* there was no allegation that appellant was subjected to physical or psychological coercion, or that his intellectual endowments were impaired. That he was fully advised of his constitutional rights is abundantly clear from the record and we are persuaded, particularly from appellant's own testimony, that he understood them. Of prime importance in determining whether there was an effective waiver of these rights is the fact that appellant, apparently acting under some parental guidance, voluntarily surrendered himself to police with the intention of telling them "what had happened." That he did so tell the police within a very short time after the interrogation had begun is likewise significant. In considering the conduct of the appellant, therefore, as it bears on the question of waiver, we think it manifest that he was not a person, such as contemplated by the *Miranda* decision, who, by reason of the custodial interrogation, is suddenly placed under a compulsion to speak where he might not otherwise do so.

Despite the fact that the testimony at trial prior to the admission of appellant's statement failed to show an express waiver of appellant's right to remain silent and to counsel, we never-

---

1. In *Miranda*, the court held at page 476—

"The warnings required and the waiver necessary in accordance with our opinion today are, *in the absence of a fully effective equivalent,* prerequisites to the admissibility of any statement made by a defendant." (Emphasis supplied.)

theless hold that the totality of the circumstances—the attendant facts of the case—are such as implictly show that he voluntarily and intelligently relinquished these rights and made a statement. We think that from the time appellant phoned the police to arrange for his surrender, to the time he signed the written transcript of his statement, he had a continuing disposition to make a statement to the police about the crime, that he was expressly and clearly warned of his constitutional rights, regarding self-incrimination and of the right to counsel, and that he understood what he was told.

In concluding that the circumstances of this case show a valid waiver, we have, of course, considered the fact that appellant was only seventeen years of age at the time of the crime and possessed a ninth grade education. We have also considered the fact that while appellant's father was present at the police station, he did not request, and the police did not therefore deny him, access to his son during the interrogation. See *State v. Hance,* 2 Md. App. 162. And while we have not considered appellant's express waiver of his constitutional rights contained in his written statement as substantive evidence of waiver—since the statement was not introduced in evidence until after the issue had been decided by the trial judge—it does tend to show in explicit terms the existence of the waiver that we have found implicit on the facts and circumstances of this case. We, therefore, find no error in the admission of appellant's confession into evidence.

Appellant next contends that it was prejudicial error for the trial court to have admitted the testimony of Detective Raley whereby he related the substance of his conversation with appellant's father at the police station. The record discloses that prior to any questioning of the appellant at the police station, Detective Raley told appellant's father, in response to his inquiry as to his son's status, that the police were going to talk to the appellant if he so desired, that the appellant did not have to talk to the police, that he could remain silent, and that the police would get the appellant a lawyer if he wanted one. While we agree that the verbal exchange between the detective and appellant's father, out of appellant's presence, was not relevant to the issue of whether appellant was personally apprised of

his *Miranda* rights or whether, having been so apprised, he waived them, nevertheless we hold that the admission of the conversation into evidence, even if erroneous, was in no way prejudicial.

Finally, we see no merit in appellant's contention that the evidence was insufficient to support his conviction. By his confession, appellant admitted shooting the victim under circumstances showing a wilful, deliberate and premeditated killing. There was independent evidence that the murder weapon belonged to appellant and the *corpus delicti* was independently established. And the trial judge was not required to believe appellant's testimony at trial that the shooting resulted from an accident.

*Judgment affirmed.*