## JOHN RUSSELL COLOPIETRO *v.* STATE OF MARYLAND

[No. 33, September Term, 1968.]

*Decided October 22, 1968.*

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Louis Peregoff,* with *Claude Hanley* on the brief, for appellant.

*William E. Brannan, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Samuel A. Green,*

*Jr., State's Attorney for Baltimore County,* and *Gary Huddles, Assistant State's Attorney for Baltimore County,* on the brief, for appellee.

PER CURIAM.

John Russell Colopietro, the appellant, was convicted under four separate indictments for larceny and under a fifth indictment for possession of barbiturates in a non-jury trial in the Circuit Court for Baltimore County. He was sentenced to a term of five years under each larceny indictment and a term of one year on the barbiturate indictment, all sentences to run concurrently. On appeal he contends his arrest was illegal and barbiturates found on him at the time should not have been admitted into evidence. He further contends that he was not advised of his right to counsel prior to his confessions of the larceny charges, and that the confessions should not have been admitted into evidence.

## THE ARREST

The evidence shows that a police officer of Baltimore County was staked out in a vacant apartment above Colopietro's for the purpose of serving a warrant upon one Frank Vincent Garbo for whom the officer had a warrant. When Garbo appeared at Colopietro's apartment door and opened it the officer arrested him under the warrant and simultaneously arrested Colopietro. As gleaned from a meager record the reasons for Colopietro's arrest consisted simply of the officer's statement that he had reliable information from a reliable informant that prior to a burglary Colopietro had been observed in the same car that approximately a month later was connected with a second burglary. Apparently some additional information had also been obtained from the prior tenants of the apartment in which the officer hid prior to the arrest but the record does not disclose the information. The record also does not disclose why any of the informants were considered reliable. Prior to trial Colopietro made a motion to dismiss which can be considered as a motion to suppress the barbiturates which a search after the arrest revealed on Colopietro's person. We hold that the arrest was illegal. The mere fact that Colopietro was observed riding in an automobile near the scene of, but prior to, a burglary a

month earlier and that same automobile was involved in a subsequent crime might well be grounds for suspicion that he was some way involved in criminal activity but hardly satisfies the test that prior to an arrest for a felony an officer must have reasonable grounds to believe that a felony has been committed and that the accused had committed it. We ruled in *Scott v. State,* 1 Md. App. 481, 231 A. 2d 728 and in *Kist v. State,* 4 Md. App. 282, 242 A. 2d 586 that a search warrant must disclose the underlying circumstances upon which the informer believed that a crime had been committed and the underlying circumstances in which the officer had a reason to believe that the information was reliable. In a somewhat similar case, *Beck v. Ohio,* 379 U. S. 89, 85 S. Ct. 223, 13 L.Ed.2d 142 the Supreme Court of the United States held that the information required to be possessed by an officer who arrested without a warrant was certainly no less than that required where an arrest warrant had been obtained. It further held that the record must clearly indicate the information on which the officer relied and that information must show that he had probable cause to believe that a felony had been committed and the accused had committed it. Compare *Draper v. United States,* 358 U. S. 307, 79 S. Ct. 329, 3 L.Ed.2d 327 and *McCray v. Illinois,* 386 U. S. 300, 87 S. Ct. 1056, 18 L.Ed.2d 62. The officer's conclusion that he had reliable information from reliable informants cannot be accepted as furnishing sufficient basis for an arrest.

## THE CONFESSION

The police testimony which was accepted by the trial judge as being accurate consisted of the fact that Colopietro was made no promises or inducements and that no threats were made against him, and that the *Miranda* warnings were given to him in the following manner:

"Q. Now, Detective Sellman, after arresting Mr. Colopietro what did you do?

"A. He was arrested, taken out to the police car, the Miranda was read. While he was in the car the Miranda was read to Mr. Garbo and while he was sitting in the back—

"Q. When you say Miranda—the Miranda Warning?

"A. Yes.

"Q. Do you have the card with you?

"A. Yes.

"Q. Would you read exactly what you read to him?

"MR. HANLEY: He didn't read it.

"THE WITNESS: I did.

"THE COURT: Did you read it to Mr. Colopietro?

"THE WITNESS: Both were in the back seat and I read it to both of them, but again I read it—this would be the first time. It is a card issued to us by Baltimore County Police Bureau. The following was read to both subjects in the police car: 'You have the absolute right to remain silent. Anything you say can and will be used against you in a court of law. You have the right to talk to an attorney before you are questioned and have him present thereafter. If you cannot afford an attorney, one will be appointed by the Circuit Court immediately and before any questions are asked. If you desire to ask questions, you can at anytime insist upon all your rights at which time all questioning will cease and no further questions will be asked.' I asked the two following questions: 'Do you understand each of the rights I have explained to you?' And I received a reply of yes. 'Having these rights in mind, do you wish to talk to us now?' Mr. Colopietro did not reply and Mr. Garbo replied, no, he didn't want to say anything.

"Q. What happened at that time?

"A. I called for assistance due to the fact I was alone. Detective Kroner and Detective Miranda came to 5503 Ashbourne Avenue. Detective Miranda stayed at Ashbourne Avenue and Detective Kroner accompanied me to Baltimore County Police Headquarters.

"Q. Did you question Mr. Colopietro at the Baltimore County Police Headquarters?

"A. He was processed and questioned by myself and Detective Robert LeCain. This occurred on October 18, 1967 at 9:30 p.m. At this time again I read

the Miranda warning with Detective LeCain present in the investigation room of the Baltimore County Police Headquarters, reading the exact same wording I read to the Court and receiving the answer to the question on the back, Do you understand each one of your rights? — if I remember correctly there were a few things Mr. Colopietro asked me questions on and I explained to simplify the language on the Miranda card, I explained it thoroughly and he said, Yes, now I understand my rights. I said, Having these rights in mind, do you wish to talk to us? He said, Yes. At that time the interrogation took place after his rights were read to him again."

Subsequently the appellant admitted the four larceny charges and in addition rode in a police car to point out the specific properties which he had burglarized.

Colopietro's testimony was to the effect that he was under the influence of narcotics and did not remember making the statements or pointing out the locations to the officers. The police officers denied that he showed any effects of the narcotics, and this testimony was accepted by the trial judge.

As to the confession Colopietro contends only that he was not properly warned of his right to counsel. This record clearly shows that all warnings required by *Miranda v. Arizona,* 384 U. S. 436, 86 S. Ct. 1602, 16 L.Ed.2d 694 were given to the accused and further that he understood his rights and knowingly and intelligently waived them, *Brown v. State,* 3 Md. App. 313, 239 A. 2d 761. Since this information is in the record, together with a denial of any promises, inducements or threats, we cannot say the trial judge abused his discretion in admitting the confession into evidence. See *Carrington v. State,* 1 Md. App. 353, 230 A. 2d 112, *Robinson v. State,* 3 Md. App. 666, 240 A. 2d 638.

> *Judgment reversed as to the conviction for possession of barbiturates and case remanded for a new trial.*
>
> *Judgment affirmed as to the larceny convictions.*