## WALTER LEE BURTON *v.* STATE OF MARYLAND

[No. 472, September Term, 1968.]

*Decided September 25, 1969.*

672

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Marshall H. Feldman* for appellant.

*Henry J. Frankel, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Edward Garrison Neal, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

ANDERSON, J., delivered the opinion of the Court.

Appellant, Walter Lee Burton, was convicted in the Criminal Court of Baltimore in a court trial, Judge Shirley B. Jones presiding, of housebreaking, rouge and vagabond, and larceny under seven indictments, same being Nos. 2691, 2692, 2693, 2694, 2695, 2698 and 2699. He was sentenced to a term of five years under each indictment, sentences to run consecutively under indictments Nos. 2692, 2695, 2698 and 2699 and concurrently under indictments Nos. 2691, 2693 and 2694. The total sentence imposed was twenty years.

On his appeal to this Court, appellant presents three questions, namely:

1. Did the court below properly admit into evidence alleged statements made by the defendant?
2. Does the evidence presented justify a conviction in each case?
3. Was the conviction under the first three counts of each indictment proper?

I

Were the alleged statements of the appellant properly admitted into evidence?

As a result of information received by the police relating to a number of burglaries that had taken place between March 29, 1968 and April 17, 1968, a warrant for burglary was obtained by Detective Harry McDonald on April 18, 1968 for the arrest of Walter Lee Burton. On April 19, 1968, appellant Burton was arrested by De-

tective McDonald and taken to the Southwest District Police Station where he was questioned in the cellblock by Detective Richard Palmer in the presence of Detective McDonald. Detective Palmer testified that prior to any questioning, appellant was advised by him as to his *Miranda* rights (*Miranda v. Arizona,* 384 U. S. 436). His testimony was as follows:

> BY MR. NEAL:
> "Q. What were those advisements?
> BY THE WITNESS:
> "A. Advised of the fact he could remain silent, he could contact anyone of his choice, had a right to have an attorney present during questioning and if he was not financially able to obtain an attorney, the Court would provide one for him. At any time during questioning he could stop the line of questioning, stop talking and request an attorney be present." [1]

An objection was then noted by counsel for the appellant. Before ruling on the objection, it was established by the lower court that there was no dispute as to the voluntariness of any statement given by the appellant and no force or coercion was used to obtain the same. Appellant's sole objection to any statement made was to the lack of compliance with the *Miranda* requirements. It was admitted that at no time did appellant ask for counsel or say that he desired to have counsel present. Moreover, the witness, in response to a question by the court, testified that appellant understood what was told him but appeared in an angry mood, and while the warnings were being given said: "Yes, yes, I know about all that."

Appellant's objection was then overruled and in so doing the lower court said:

> "I think the defendant was adequately advised

---

1. There was testimony of other police officers that Palmer and another officer also advised appellant that anything he said could be used against him.

as to his right to counsel. He said, 'Yes, I know all that.' The record will show that there has been no objection made to voluntariness of the statement on grounds of force, threats or violence. So, I will overrule the objection and the State may proceed."

Detective Palmer then testified to appellant's statements as follows:

BY MR. NEAL:
"Q. What did the defendant say to you at that time?
"A. Well, the defendant said to me, he says, 'You are charging me with the Edgewood Road burglary.' He said he wasn't involved. He said, 'You didn't charge me with Mount Holly Street or Wildwood Parkway.'
"Q. Ask that one . . .
"A. He said, 'You are charging me with the Edgewood Road burglary which I didn't commit.' But, he said, 'You didn't charge me with Wildwood Parkway and Mount Holly Street burglaries.'
* * *
"Q. Any other statements given by him to you at that time?
"A. Yes, as to the addresses on Mount Holly Street and Wildwood Parkway.
"Q. What were they?
"A. 1106 Wildwood—correction, Mount Holly Street. 1308 Wildwood Parkway and the other was . . . .
BY THE COURT:
"Q. Was he telling you all this? Are you still on the statement, Officer?
BY THE WITNESS:
"A. He told me this from the cellblock.

BY MR. NEAL:
"Q. What was the other address?
"A. 1100 Mount Holly."

From the record transcript we are of the opinion that the *Miranda* requirements (*Miranda v. Arizona, supra*) were sufficiently complied with and the appellant, knowingly and intelligently, waived his privilege against self-incrimination and the right to counsel. *Brown v. State,* 3 Md. App. 313, 239 A. 2d 761. In arriving at this conclusion we have considered the fact that there was no allegation that appellant was subjected to physical or psychological coercion or that his intellectual endowments were impaired. It is clear from the record that he was advised as to his constitutional rights and, furthermore, understood them. While his rights were being explained to him by Detective Palmer, he kept repeating, "Yes, yes, I know about all that," and then volunteered the statement with reference to the Mount Holly Street and Wildwood Parkway burglaries along with the addresses of the apartments burglarized. As stated in *Brown v. State, supra,* p. 321, the ultimate determination of whether the appellant knowingly and intelligently waived his *Miranda* rights before making a statement is governed by whether the particular facts and circumstances involved in the case are such as demonstrate an intelligent and intentional relinquishment of a known right or privilege. Moreover, a statement by the accused that he fully understands and waives his rights is not an essential link in the chain of proof. Waiver may be shown by the attendant circumstances. *Miller v. State,* 251 Md. 362, 378, 247 A. 2d 530; *United States v. Hayes,* 385 F. 2d 375 (4th Cir.); *Brown v. State, supra; Mullaney v. State,* 5 Md. App. 248, 246 A. 2d 291. We therefore find that appellant's statements were properly admitted into evidence by the lower court.

## II

Does the evidence presented justify a conviction in each case?

Appellant next challenges the sufficiency of the evidence and complains that the facts fail to justify a conviction in each case.

## Indictments Nos. 2691, 2693 and 2694

Under these three indictments the appellant was charged and convicted of breaking in the daytime the apartment of Ben Mobley, 1100 Mount Holly Street, March 31, 1968 (No. 2691); the apartment of Robert L. McCleary, 1106 Mount Holly Street, March 30, 1968 (No. 2693); and the apartment of Maxwell Anderson, 1106 Mount Holly Street, March 30, 1968 (No. 2694) and stealing from each various articles of personal property.

Each of the owners testified that on the above dates when they left their homes the doors were fully locked and no one had been given permission to enter. Upon their return they found that their homes had been broken and entered and various valuable articles of personal property removed therefrom.

The only evidence that links the appellant with these three offenses is his admission that he committed these offenses as set forth in the statement given Detective Palmer at the Southwest Police Station on April 19, 1968. In *Miller v. State, supra,* p. 381, the Court of Appeals said:

"[The] well established law in this State is that an extrajudicial confession or statement of the accused does not warrant a conviction unless there is independent evidence to establish the *corpus delicti. Hadder v. State,* 238 Md. 341, 209 A. 2d 70; *Pierce v. State,* 227 Md. 221, 175 A. 2d 743; *Koprivich v. State,* 1 Md. App. 147, 228 A. 2d 476. The sufficiency of this independent evidence need not establish, by itself, the *corpus delicti* beyond a reasonable doubt, but any facts and circumstances that are substantial in nature and fortify the truth of the confession or statement are sufficient to support a conviction. *Had-*

*der v. State and Koprivich v. State,* both *supra.*
Such proof does not have to be full and positive
and it may be circumstantial in nature, when
direct evidence is not available. *Cooper v. State,*
*supra; Bollinger v. State,* 208 Md. 298, 117 A.
2d 913; *Davis v. State,* 202 Md. 463, 97 A. 2d
303."

Moreover, the appellant in his statement to Detective
Palmer supplied him with the specific addresses of the
residences on Mount Holly Street and Wildwood Park-
way which were broken into. Appellant's admission, to-
gether with the clear evidence of the burglary at each
of the dwellings, was sufficient to sustain the convictions,
and we think that the lower court's judgment of con-
viction in each of these three cases was not clearly er-
roneous under Maryland Rule 1086.

### Indictments Nos. 2692 and 2695

Under these two indictments appellant was charged
and convicted of breaking in the daytime the apartment
of Lloyd Taft Vaughan, 1218 Seminole Avenue, March 29,
1968 (No. 2692) ; the apartment of Howard Jason, 1216
Seminole Avenue, April 17, 1968 (No. 2695), and steal-
ing from each various articles of personal property and
cash.

Both Lloyd Taft Vaughan and Howard Jason testified
that on the above dates when they left their homes the
doors were fully locked and no one had been given per-
mission to enter. Upon their return they found that their
homes had been broken and entered and various articles
of personal property and cash had been removed there-
from.

The witness, Helen Hudson, who lived at 1212 Semi-
nole Avenue, testified that on March 29, 1968 she had
gone to the door to bring in her mail before going to
work. While there she noticed several young men, one
of whom was appellant, taking things from 1218 Semi-
nole Avenue, the Vaughan home, and placing them in a
car. She did not suspect anything at the time because she

thought the people were moving out. Later she learned there had been a burglary.

On April 17, 1968, between 12 noon and 12:30 p.m., while home working, her children alerted her that someone was at the door. She looked out the window and saw appellant standing on her porch. She recognized him as one of the young men she had seen on March 29th removing things from 1218 Seminole Avenue. The dog was barking and appellant and the young men with him hurriedly left and as she watched she saw them go to 1216 Seminole Avenue, the Jason home, and heard the door shut. Since she knew no one was home, she called the police. Shortly thereafter she saw furniture, television sets and clothes being removed from 1216 Seminole and loaded into the trunk of a blue Ford. She recognized the car as the same car she had seen on March 29th, a blue Ford with the right rear bumper torn off and temporary license tags. She took down the license number and again called the police. When the police arrived she gave them the license number and description of the car and the men. At the trial she made an in-court identification of the appellant as the same man she had seen on March 29, 1968 and April 17, 1968.

### Indictment No. 2698

In this indictment appellant was charged and convicted of breaking in the daytime the dwelling of Shirley Kibler on April 11, 1968 and stealing goods and valuables therefrom. Mr. Kibler testified that when he left his home at 332 Grantley Street on April 8th all doors were locked and no one had been given permission to enter. He returned home from his vacation on April 15th and found his home had been broken into and a large number of his personal belongings were missing. Access had been gained through the rear basement door, from which a glass pane had been broken.

The State produced as witnesses Harold White and Gilbert James. Mr. White, who resided at 328 Grantley Street, testified that on April 11, 1968, at about 10:30

a.m., while driving his car, he saw appellant walking down the steps leading into the rear basement of 332 Grantley Street, the Kibler home. He also saw a blue Ford with temporary tags parked in the alley. His suspicions being aroused, he drove around the block and went into the home of his uncle, Gilbert James, at 326 Grantley Street, alerted him and called the police. He did not see appellant leave, but he noticed a 1959 blue Ford with temporary license tags parked in the alley with another man waiting. He waited around for the police and when they arrived went over to 332 Grantley Street with them and found everything "in a mess." Later that day he saw the same blue Ford parked at Baltimore and Smallwood Streets and wrote down the tag number. He made an in-court identification of appellant at the trial.

Gilbert James, who resided at 326 Grantley Street, testified that on the morning of April 11th, after conferring with his nephew, Harold White, he looked out the back window of his home and saw the appellant carrying packages down the alley. He had them under his arm and under his sweater. Later he was shown a group of photographs by the police and picked two of appellant out of the group. At the trial he made an in-court identification of the appellant.

### Indictment No. 2699

In this indictment the appellant was charged and convicted of breaking in the daytime the apartment of Walter Robinson on April 1, 1968 and stealing therefrom goods and articles of value. Mr. Robinson, who resided at 1308 Wildwood Parkway, testified that he left home for work at 7:45 a.m., that all the doors were locked, and no one had been given permission to enter. He returned home at 3:45 p.m. in response to a call from the manager. Upon his return he found his apartment had been broken and entered by forcing open the door. He found a bedspread missing; also his portable T.V. and other valuable personal property.

The State's witness, Betty Scott, testified that she was working at 1307 Wildwood Parkway (Edmondale Apart-

ments) on April 1, 1968. The manager called her attention to the fact that she had seen two boys going in 1308 Wildwood Parkway and had not seen them come out. Shortly thereafter she saw the two boys leaving the apartment building at 1308 carrying some objects in what appeared to be a sheet. She watched them place the bundle in the trunk of a blue Ford with temporary tags, but was unable to get the license number before they drove off. She then checked the apartment building at 1308. There are four apartments in the building and she had keys to all of the apartments. In checking the apartments she found that the door to Mr. Robinson's apartment had been jimmied and forced open. She then called Detective Palmer.

In each of the cases under indictments Nos. 2692, 2695, 2698 and 2699, the State not only established beyond question the *corpus delicti* but conclusively established the appellant's connection therewith by the testimony of eyewitnesses who positively identified the appellant as being at the scene of the crime. From the evidence the lower court could find that entry in each case had been gained by force and the appellant was actually seen either going into or coming out of the dwelling carrying the victim's personal property and that appellant was the thief or at least one of them involved.

The test of the sufficiency of the evidence in a case tried before the court without a jury is whether the evidence, if believed, either shows directly or supports a rational inference of the facts to be proved from which the court could fairly be convinced beyond a reasonable doubt of the defendant's guilt of the offense charged. *Jones v. State*, 5 Md. App. 180, 186, 245 A. 2d 897; *Thomas v. State*, 1 Md. App. 528, 533, 231 A. 2d 915. As the evidence met this test the finding of the lower court thereon was not clearly erroneous. Maryland Rule 1086.

## III

Should appellant have been convicted of rogue and vagabond under the second count of each indictment?

The State admits that the evidence did not support a conviction of rogue and vagabond under the circumstances and we agree. See *Manning v. State,* 2 Md. App. 177, 182, 233 A. 2d 821.

The State concedes that the applicable part of Maryland Code (1957 as amended), Art. 27, § 490 provides:

> "If any person * * * shall be found in or upon any dwelling house * * * with an intent to steal any goods or chattels, every such person shall be deemed a rogue and a vagabond * * *."

That part of the offense of rogue and vagabond here applicable was a necessary ingredient of the greater offense of breaking a dwelling house in the daytime with intent to steal, Maryland Code (1957 as amended), Art. 27, § 30 (b), and, therefore, upon conviction of the latter offense, was merged into it. *Chittum v. State,* 1 Md. App. 205, 228 A. 2d 628. We find therefore that the conviction of rogue and vagabond under the second count of each indictment was improper. We note, however, that although appellant was convicted on three counts, a general sentence of five years was imposed under each indictment and that said sentence did not exceed the maximum provided by statute under the first and third counts.

> *Judgments affirmed on Indictments Nos. 2691, 2692, 2693, 2694, 2695, 2698 and 2699 as to the first and third counts; judgments vacated as to the second count in each of the aforesaid Indictments as merging with the first count.*