## BERGEN v. STATE

[No. 279, September Term, 1963.]

396

*Decided April 14, 1964.*

The cause was argued before BRUNE, C. J., and HENDERSON, PRESCOTT, HORNEY and MARBURY, JJ.

*Ronald L. Lapides* for appellant.

*Stuart H. Rome, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, William J. O'Donnell* and *Frank Cannizzaro, Jr., State's Attorney* and *Assistant*

*State's Attorney,* respectively, *for Baltimore City,* on the brief, for appellee.

MARBURY, J., delivered the opinion of the Court.

Argument was first heard in this case on the State's motion to dismiss the appeal for failure of the appellant to strictly comply with Maryland Rule 828 b (requiring that the printed extract set forth the particular portions of the record necessary for the determination of the questions presented on appeal). We reserved decision on the motion and heard argument on the merits. While we do not condone the failure of the appellant to comply strictly with the rules, we think that a dismissal of the appeal would not be appropriate. In this indigent appeal, the missing material has been supplied by the State, and the omissions were not deliberate. *Brown v. Fraley,* 222 Md. 480, 483, 161 A. 2d 128. Whether to dismiss the appeal or not is discretionary with this Court, and under the circumstances of this case, we do not think it advisable to do so. Accordingly, the motion to dismiss is denied.

William Bergen was charged under indictment No. 3560 with violating Code (1957), Article 27, Section 580 (Trespass in order to look into windows, etc.). He was also charged under indictment No. 3561 with violating Code (1957), Article 27, Section 490 (Persons deemed rogues and vagabonds). Tried before Judge Prendergast, sitting without a jury, appellant was convicted of both charges and sentenced to thirty days in the Maryland House of Correction for violating the trespass statute, and to two years in that institution for having been determined a rogue and vagabond, the sentences to run concurrently. On this appeal he claims that the evidence was insufficient to support either verdict, that the two verdicts are inconsistent, and that he was denied a constitutional right to cross-examine the prosecuting witness at his preliminary hearing.

The primary contention of the appellant is that the material elements of Section 490 were not proved. Four alternative elements or situations are set forth in the statute. Admittedly not applicable are the first two, which require that at the time one

is apprehended he possess tools or implements from which a felonious intent could be inferred, or had "offensive weapons" under similar suspicious circumstances from which a felonious intent likewise could be inferred. The statute as applicable here reads in pertinent part:

"If any person * * * shall be found in or upon any dwelling house, warehouse, storehouse, stable or outhouse, or in any enclosed yard or garden or area belonging to any house, with an intent to steal any goods or chattels, every such person shall be deemed a rogue and vagabond * * *."

About 9:25 p.m. on August 1, 1963 two officers of the Baltimore police force were patrolling in an unmarked car in an alley which runs behind and parallel to the north side of the 3700 block of Liberty Heights Avenue. As they reached the northwest corner of the house numbered 3710, and at a point in the alley on a line with the west side of that house, they saw a man standing on a large rock directly beneath one of three windows, peering into what proved to be the dining room. The house, a home for the aged, was dark throughout the first floor though there were lights on the second floor. Quite by coincidence, Mrs. Maxine Dunnmon, who operated the home, entered the unlighted dining room and saw what appeared to her to be the head of a person silhouetted by lights from her neighbor's property, at almost the same instant the figure was observed by the policemen. Realizing that he had been discovered, the man ran toward Liberty Heights Avenue with the police in pursuit on foot. After a chase of a block or more, the police apprehended the man who proved to be the appellant Bergen. Their search of him and the area around the window in an attempt to find burglary tools was fruitless, but Mrs. Dunnmon testified at the trial that she had noticed that the window, which was normally kept closed and locked, was raised about six inches.

Specifically, the appellant contends there was no testimony to support the conclusion that he was "in or upon" the house and that the yard in which he had been standing was not "enclosed", and therefore he can not be guilty as a rogue and vaga-

bond under Section 490. The State, on the other hand, contends that both elements were satisfied. It suggests that since the portions of the statute being considered are exactly as they were when the law was enacted we should give to the term "dwelling house" the broad meaning it had at common law, especially when applied to common law burglary, to which this statute is closely allied. At common law it appears that the term dwelling house embraced all that was within the curtilage, including the surrounding land. See Annotation "Burglary: outbuildings or the like as part of 'dwelling house'" 43 A.L.R. 2d 831. See also Clark and Marshall, *Crimes* (5th ed.) Section 406; Hochheimer, *Criminal Law*, (2d ed.) Section 276; Perkins, *Criminal Law* (1957), Chapter 3, pp. 160-162. Therefore, argues the State, Bergen was *upon* the house because he was within Mrs. Dunnmon's curtilage and upon her land, and physical contact with the house was thus not required. However, the State also contends, with much force we think, there is a compelling inference that the appellant was leaning against the house (and thus upon it) when he stood on the rock peering into the dining room, and clearly so if the lower court believed that he opened the window. (*Cf. Goodwin v. Lumbermens Mut. Cas. Co.,* 199 Md. 121, 85 A. 2d 759, and cases there cited for the meaning of "upon an automobile" for purposes of insurance coverage.)

We consider it unnecessary to rest our affirmance of the rogue and vagabond conviction upon that theory, however, for we think that the evidence is sufficient to support the conclusion that Bergen was in an enclosed yard or area. The appellant lays great stress on the word "enclosed" and contends for a construction of the statute that would necessitate completely surrounding barriers. We think that this requirement would be too stringent. The meaning the word "enclosed" might have under one situation is not necessarily the connotation it might have when used in a different context. For example, *Wannmacher v. Baldauf Corp.,* 57 N. W. 2d 745 (Wis.), cited by appellant, does not involve land, but deals with a statute requiring that openings in floors be guarded by an enclosure. Also in his brief, appellant virtually admits that an enclosure may be partial, as well as total. The testimony showed that the

yard or area in question was bounded on the west by a hedge six feet high and tall pine trees, which together formed a complete barrier from Liberty Heights Avenue back to the alley. It was bounded on the north, at the rear, by a brick and wrought iron fence and Mrs. Dunnmon's garage, leaving a space open to accomodate one automobile. On the east was a partial hedge, shrubbery, and trees. On the south, or street side, it was open except for two large bushes. It is true that there was no continuing and complete physical enclosure on all four sides of the yard or area, but we reject the continuous physical barrier concept. The yard was clearly demarcated by the street, hedges, trees, shrubbery, wall, alley, and garage. There is authority supporting the proposition that an area in order to be enclosed does not have to be surrounded completely by unbroken physical barriers. *United States v. One Graham Bros. Truck,* 39 F. 2d 141 (driveway does not prevent premises from being enclosed) ; *Payne v. Gould,* 52 Atl. 421 (Vt.) (property may be enclosed though side fronting on street is open), cited by appellant. While we are mindful that penal statutes should be strictly construed in favor of the accused, *Weinecke v. State,* 188 Md. 172, 176, 52 A. 2d 73, nevertheless, we take the view that the area involved here was substantially enclosed and satisfied that element of Section 490.

The requisite intent to steal properly could have been inferred from the open window and from the appellant's position thereat, from his flight, and from his remark, "Well, you got me." To these was added his wholly incredible explanation of his presence at the window.

With respect to the trespass charge, Section 580 (commonly called the "peeping Tom" statute) appellant contends that there is insufficient evidence to support the conviction, and moreover, that the verdict is inconsistent with that which found him to be a rogue and a vagabond. The question of whether one may have a simultaneous intent to steal and also to invade the privacy of the occupants of a house we need not decide because in our view the evidence was insufficient to establish Bergen's intent to invade the privacy of the occupants of 3710 Liberty Heights Avenue. Significantly, it was about 9:25 p.m., dark outside and the entire first floor was likewise dark. We think

that if his intent had been to invade anyone's privacy he would have chosen a lighted room into which to peer. In addition, while the open window is persuasive evidence of an intent to break and enter, we think it unconvincing to show an intent to look "into any window" for the purpose of invading privacy.

There is a question of whether the appellant has properly preserved for review the contention that his constitutional rights were abridged when he was denied the right to cross-examine the prosecuting witness at the preliminary hearing. Aside from one casual statement by Bergen when he testified at the trial there was no corroborating evidence to show that the deprivation occurred or that the trial court was asked to rule on it, and therefore we would not ordinarily decide the point raised here essentially for the first time. Rule 885. All that really happened at the preliminary hearing was that the municipal court judge, after determining the charges and the circumstances of the alleged crimes, ordered Bergen held for action of the grand jury. It might be added that we have held that even a failure to hold a preliminary hearing before a magistrate does not necessarily invalidate a subsequent indictment and trial thereon. *Shorey v. State,* 227 Md. 385, 177 A. 2d 245, and cases cited. The magistrate quite properly ordered Bergen held for the action of the grand jury, since the rogue and vagabond charge was beyond his jurisdiction.

Although the judgment under indictment No. 3560 is reversed, we see no reason to remand for a new trial since the trial court sentenced the appellant to two years in No. 3561 to run concurrently with No. 3560, under the same facts and circumstances.

*Judgment in No. 3560 reversed.*

*Judgment in No. 3561 affirmed.*