## CROSSLAND *v.* STATE OF MARYLAND

[No. 42, September Term, 1968.]

*Decided January 13, 1969.*

The cause was argued before HAMMOND, C. J., and MARBURY, BARNES, McWILLIAMS, SINGLEY and SMITH, JJ.

*Howard B. Gersh* for the appellant.

*Edward F. Borgerding, Assistant Attorney General,* for the appellee.

BARNES, J., delivered the opinion of the Court.

The appellant, Spencer Crossland, was indicted by the Grand Jury of Baltimore City in 1966 on four counts: (1) on having committed a daytime house-breaking, (2) for being a rogue and vagabond, (3) for having committed larceny and (4) for having received stolen goods. The case was tried before Judge James A. Perrott, without a jury, in the Criminal Court of Baltimore. The trial court granted Crossland's motion for a directed verdict at the conclusion of the State's case with respect to the first, third and fourth counts of the indictment because the State had failed to prove ownership of the stolen articles. Crossland, however, was convicted of being a rogue and vagabond under the second count and was sentenced to eighteen months imprisonment from January 23, 1967, when Crossland's motion for a new trial was overruled. Crossland appealed to the Court of Special Appeals, contending that the evidence in the case was insufficient to sustain the conviction. The Court of Special Appeals on January 11, 1968 affirmed Crossland's conviction. See *Crossland v. State,* 2 Md. App. 722, 237 A. 2d 85. We granted certiorari on April 11, 1968.

The relevant facts are not in dispute. Police Officer Joseph C. Folio, Sr. on September 1, 1966 while patrolling his post at or near the intersection of Twenty-Third and Boone Streets, in Baltimore City, observed Crossland walking out the front door of a dwelling house located at 524 East Twenty-Third Street. He observed that Crossland was carrying a portable record player in one hand and a transistor radio in the other. Crossland then walked east on the opposite side of Twenty-Third Street to Boone Street, turned the corner, and proceeded south on Boone Street, out of the sight of Office Folio. The police officer went immediately into the dwelling house from which Crossland had emerged. After receiving "certain information" from the occupant of the house, Mrs. Maggie Sheppard, he hailed a taxi-cab and directed the driver to drive throughout the neighborhood where he had last observed the appellant. As they approached Boone and Twentieth Streets, Officer Folio saw Crossland place the record player on the sidewalk and start to walk west on Twentieth Street. The Officer then arrested Cross-

land and in searching his person, discovered a 12-inch screwdriver which was stuck in Crossland's belt. Approximately 5½ minutes had elapsed from the time Officer Folio spoke to Mrs. Sheppard until Crossland was apprehended. Mrs. Sheppard identified the record player as the property of her grandson and stated that it had been in the dining-room window of her home on the day it was taken, that she had not given any one permission to remove it, that she did not see Crossland in her house and that she had never seen Crossland before. There was no evidence of a breaking into the premises.

Count (2) of the indictment was predicated upon the provisions of Code (1957), Article 27, Section 490 defining a rogue and vagabond and providing for punishment for that offense. Section 490 provides as follows:

> "If any person shall be apprehended *having upon him any picklock,* key, crow, jack, bit or *other implement, at places and under circumstances from which an intent may be presumed* feloniously *to break and enter into any dwelling house,* warehouse, storehouse, stable or outhouse, *or shall have upon him* any pistol, hanger, cutlass, bludgeon, *or other offensive weapon, also at places and under circumstances from which may be presumed an intent feloniously* to assault any person, *or shall be found in or upon any dwelling house,* warehouse, storehouse, stable or outhouse, or in any enclosed yard or garden or area belonging to any house, *with an intent to steal any goods or chattels,* every such person shall be deemed a rogue and vagabond, and on being convicted thereof shall be sentenced to the penitentiary for not less than one month nor more than two years, or to imprisonment in jail, at the discretion of the court, for a like term." (Emphasis supplied.)

As we indicated in *Bergen v. State,* 234 Md. 394, 199 A. 2d 381 (1964), there are four alternative elements or situations in which the statute is applicable:

1. The accused at the time of apprehension possessed tools or implements from which a felonious intent could be inferred; *or*

2. The accused at the time of apprehension had "offensive weapons" under similar suspicious circumstances from which a felonious intent could be inferred; *or*

3. The accused is found "in or upon" any dwelling house, storehouse, stable or outhouse with an *intent to steal* any goods or chattels; *or*

4. The accused is in any enclosed yard or garden or area belonging to any house with intent to steal any goods or chattels.

The State, as appellee, contends that Crossland's conviction can be supported under elements 1 and 3, while Crossland contends that the evidence, which indicates the *completion of the intended crime prior to apprehension,* will not support the conviction. Under the unusual facts of this case, we agree with Crossland's contention and will reverse the conviction.

The language of Section 490 indicates that it is an essential element of the statutory crime that the accused have the intent *to commit* a crime. The language used is "to break and enter," "to assault," with an intent "to steal." This language indicates that it is the contemplated commission of the specified crimes which is referred to in the statute. Also, the statute speaks in terms of "an intent to * * * [break, assault, steal, etc.]." We believe that the normal usage of this language implies the mental processes preliminary to the actual doing of or completion of a particular act. Thus Black's Law Dictionary 992 (3rd Ed. 1933) defines "intent" (in criminal law) as "Purpose; formulated design; *a resolve to do or forbear a particular act; aim;* determination. In its literal sense, the stretching of the mind or will *towards* a particular object." (Emphasis supplied.) We believe that it is manifest that one cannot formulate "a resolve to do or forbear [doing]" something which is already done, nor can one "aim" or move "towards" an end that is already accomplished. In addition, the beneficial and useful purpose of this important statutory provision, first passed by the General Assembly by The Acts of 1809, Chapter 138, Part VII, Section 4[1] is to give the enforcement officers a

---

1. This was part of a general law in regard to punishments for various crimes and the creation of certain substantive crimes. The statute has the title "An act concerning crimes and punishments" and contains the following interesting recital: "Whereas it fre-

tool to apprehend and suppress more aggravated criminal conduct *prior* to its actual commission.

The Court of Special Appeals in *Buckley v. State,* 2 Md. App. 508, 235 A. 2d 754 (1967), properly held that when the accused had been convicted upon a count charging the breaking and entering of a building to steal goods worth $100 and upward, the count in the indictment charging the accused with being a rogue and vagabond for being found on those same premises with intent to steal merged in the breaking and entering count so that a reversal was required of the conviction under the rogue and vagabond count. To the same effect, see *Manning v. State,* 2 Md. App. 177, 233 A. 2d 821 (1967) and *Chittum v. State,* 1 Md. App. 205, 228 A. 2d 628 (1967).

Although there was no conviction for the substantive crime in the present case, it appears that the failure to convict was based upon the technical failure of the State to prove ownership of the stolen goods satisfactorily. The taking of the chattels by Crossland and their asportation were clearly established by the evidence. In other words, the substantive crime had in fact been committed by Crossland and under these unusual circumstances, the necessary intent "to enter" or "to steal" no longer existed; the substantive crime was a *fait accompli.* The possession of the 12-inch screwdriver under the circumstances above described would come within the statutory definition of "other implement[s]"—see *McCray v. State,* 236 Md. 9, 15, 202 A. 2d 320, 323 (1964)—but the placing of the stolen record player down on East Twentieth Street by Crossland and his walking away from it, indicates an attempt to avoid apprehension for the *completed crime.* Accordingly, the possession of the screwdriver under those circumstances would not justify an inference that he possessed it "to break and enter" any dwelling house. Nor was Crossland's walking *out* of the dwelling house

quently happens, that men resigning themselves to the dominion of inordinate passion, commit great violations upon the lives, liberty or property, of others, which it is the great business of the laws to protect and secure, and experience evinces that the surest way of preventing the perpetration of crimes, and of reforming offenders, is by a mild and justly scale of punishments; therefore, Be it enacted, etc."

with the stolen goods evidence from which it could be inferred that he was there with the intent "to steal." It was evidence that he *had stolen* the chattels and his prior intent "to steal" necessarily did not exist at that time. Under these unusual circumstances, there was, in our opinion, no evidence legally sufficient to support Crossland's conviction under Section 490 as a rogue and vagabond.

Police Officer Folio is to be commended for his intelligent and careful procedure in this case. The final decision in this case in no way reflects upon his excellent work in apprehending Crossland.

*Judgment reversed.*