## RONALD RADCLIFFE v. STATE OF MARYLAND

[No. 247, September Term, 1968.]

*Decided March 11, 1969.*

*Victor L. Crawford* for appellant.

*Bernard L. Silbert, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, William A. Linthicum, Jr., State's Attorney for Montgomery County,* and *Barry H. Helfand, Assistant State's Attorney for Montgomery County,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

Ronald Radcliffe, Michael Lee Hernandez and David John Vucci were charged by an information with being rogues and vagabonds. Radcliffe, the appellant on this appeal, separately tried at a court trial in the Circuit Court for Montgomery County, was found guilty and sentenced to 18 months.[1] He con-

---

1. Vucci was found guilty by a jury and Hernandez pleaded guilty. Each was sentenced to 18 months.

tends that a search and seizure of evidence incident to his arrest was unreasonable because his warrantless arrest was illegal and that the evidence was not sufficient to sustain his conviction.

## THE FACTS

Detective-Sergeant Thomas Mosley, assigned to the Silver Spring Detective Bureau, Montgomery County Police, was the only witness testifying at the trial. He said that about 3:00 A.M. on 28 January 1967 he and Lt. John Shaw were on duty and had parked their car where they could observe the Georgian Motel in Silver Spring. He saw the appellant, Hernandez, Vucci and a girl come out of the motel and enter a green Mustang and drive off with the appellant at the wheel. He followed them. They went to the Drug Fair located at the corner of Colesville Road and Georgia Avenue where Vucci got out of the car and went into the store. When he came out and got back in the car he had a paper bag which appeared to contain "some objects." The Mustang went north on Georgia Avenue, turned left onto Viers Mill Road and then turned right onto Galt Street. The police lost the car for a time. When he saw the car a short time later, the appellant was still driving and Vucci and Hernandez were passengers. The Mustang went north on Rockville Pike to Mount Vernon Drive, turned left to the street that runs in the rear of Richard Montgomery High School, went down to Blandford Street and made a U-turn. The police drove past them and again lost the car. About five minutes later Mosley saw the car parked on the corner of Mercer Road and Mount Vernon Drive. The appellant was the only one in the car. The police drove around the block to the corner of Crotzer's Lane and Mercer Road, left their vehicle and carrying a portable radio, went to the rear of the houses "in a position directly across from the car occupied by Ronald Radcliffe, the Mustang." The police hid in the bushes and about 15 minutes later—"this was about a quarter to four in the morning"—Mosley saw Vucci and Hernandez running from the side of the houses, the rears of which "back up" to the Richard Montgomery school. He had called for assistance and just prior to seeing Vucci and Hernandez running he saw a marked police car "coming around" through the school property. Hernandez either

had on or was carrying a white glove. The officer knew that neither Vucci nor Hernandez lived in the area. As they "were just getting into the car," and the appellant was attempting to start it, Mosley yelled: "Police; Stop. You are under arrest." The dome light was on as the police ran to the car and Mosley saw a pair of white gloves "on the floorboard between Hernandez's seat," and "on the passenger side of the front seat was a hammer and a pair of gloves." Hernandez was searched and a chisel was found in his left front jacket pocket. A Drug Fair paper bag was lying under the seat where the appellant was sitting. It contained a pack of chisels and punches. A hammer was on the floorboard. At this point the appellant objected to the admission of these articles in evidence on the ground of illegal arrest. The objection was overruled. A fence between the school yard and the houses adjacent thereto was painted with redwood paint and on a pair of the gloves found was paint which appeared to be the same color as that on the fence. Mosley said he interrogated the appellant at the police station and he made a statement. Mosley testified as to the content of the statement.[2]

---

2. On appeal the admission of the statement is not challenged. At the trial the State showed that the appellant had been informed of his rights under *Miranda v. Arizona*, 384 U. S. 436, that he had signed a *"Miranda* waiver form", and that the statement was otherwise freely and voluntarily made. The appellant objected to the statement on the ground that the State had not shown compliance with Md. Code, Art. 52, § 97. Chapter 299, Acts 1967, codified as Art. 52, § 97(h), Title "Justices of the Peace", subtitle, "Trial Magistrates System", became effective 1 June 1967. It is applicable only to Montgomery County and provided for the appointment of committing magistrates by the County Council with the advice and consent of the chief judge of the People's Court. It further provided that the People's Court shall prescribe such practice and procedure to assure that a magistrate "is always on duty and available for immediate presentment of any arrested person, that such· magistrate be required to advise the arrested person of his constitutional rights including the right to be assigned, retain, or waive the assistance of counsel as the case may require, that such magistrate be required to set bond, determine probable cause, assign counsel where necessary, and perform other functions now performed by the justices of the peace of said county. The County Council shall require that each arrested person be taken before such committing magistrate immediately following arrest without

The appellant said he and Vucci had been in Washington earlier that evening and then came back to the Georgian Motel on prior arrangements to meet Michael Lee Hernandez; "that at the Motel they began to discuss, to discuss taking a trip, either to Florida, New York or Philadelphia. And they decided to break into a place to obtain money for this trip. They stated Richard Montgomery because they figured a basketball game had been held that night, which was Friday night. The arrest was made that night or Saturday morning. They felt since there had been a basketball game held there, there would be a lot of money in the school; stated they went to Richard Montgomery for the purpose of breaking into the school; stated that when Vucci and Hernandez came running back to the car, he told them, 'Let's get out of here; the cops are everywhere.' "

On cross-examination the transcript of the proceedings reads as follows:

"BY MR. NOYES (defense counsel):
Q. Detective Mosley, when you saw these two male subjects, Vucci and Hernandez, running out from behind these two houses you described, shortly thereafter you stated you stepped out, identified myself and arrested them; is that right?
A. Yes, sir.
Q. At that point what felony did you believe that these two men had committed, if any?
A. Housebreaking.
Q. And you believe they had broken in where?
A. The school.

---

delay and shall provide that all proceedings concerning such arrested persons before the magistrate be recorded upon a mechanical device and preserved until the criminal proceeding concerning such arrested person is finally concluded." We are not aware that the County Council of Montgomery County has taken action to "require that each arrested person be taken before a committing magistrate immediately following arrest without delay" and in any event since the appellant here was arrested prior to the effective date of the Act, it was not applicable to him. Questions relating to the objection made below not being presented on appeal, we do not consider them.

Q. Did you determine if the school had been broken into?

A. We went back later.

Q. At that point, now, not later, but when you stopped them, had you in any way inspected that school to see if it had been broken into?

A. I had other grounds to believe it was.

Q. What other grounds?

A. Due to Hernandez's method of operation, due to the prior arrest of him on another offense where he used a motel, as he did this night, that he did break into the school and he used Drug Fair tools to break in the school.

Q. What you're indicating you knew, was it Vucci?

A. Hernandez was.

Q. He was known to you as a housebreaker?

A. Very definitely.

Q. The fact you saw him in the vicinity of the Richard Montgomery High School without inspecting the school, you then presumed he had broken into the school; is that right?

A. Based on the other things, the fact he registered in the motel, he had gone to Drug Fair and made a purchase which was in line with his method of operation, the fact that he had gone down to Richard Montgomery High School in the rear where he did not live, the fact his car at 3:45 A.M. in the morning, got out of the car and went to the rear where he came—yes, sir, I felt he had committed a housebreaking.

Q. Detective Mosley, wouldn't it have been just as plausible that he was casing the place?

A. I don't think so because of the night it was. It was Friday night and this is when he elected to break in from the prior arrests of him, that this, he, I felt he had broken in. I felt in my own mind that he had.

Q. You did state you saw a police car coming around with the light flickering around?

A. Yes, sir. We called for assistance.

Q. This is what you believe chased Vucci and Hernandez away from the school?

A. That is correct, sir.

Q. How did you know that they had not been chased away from that school before any attempt was made to break in?

A. Because enough time had elapsed from the time the car was parked for them to."

Mosley said that the arrests were made because he felt on the knowledge he had and his observations that Vucci and Hernandez had broken into the school with felonious intent [3] and that the appellant was a principal because he was "the wheelman, or the driver." [4]

## THE ARREST

We believe what we said in *Simms v. State,* 4 Md. App. 160, at 166-167 to be apposite here:

"[T]he rule of probable cause is a non-technical conception of a reasonable ground for belief of guilt, requiring less evidence for such belief than would justify conviction but more evidence than that which would arouse a mere suspicion. * * * In assessing the validity of an arrest under the rule the essential ingredient is that probable cause existed within the knowledge of the arresting officer and not that he necessarily construed that knowledge correctly. It is not the belief of the officer that determines the validity of the arrest; it is whether, in the situation in which he

---

**3.** The breaking of a storehouse with intent to steal goods of the value of $100 or more is a felony, Art. 27, § 32; the breaking of a storehouse and stealing goods of the value of $5 or upwards is a felony, § 33; the breaking of a storehouse with intent to steal goods under the value of $100 and such breaking and stealing goods under the value of $5 are misdemeanors, § 342.

**4.** The State had attempted to elicit testimony on direct examination on the issue of probable cause for the arrest as was adduced on cross-examination but objection by the appellant was sustained by the court.

found himself, he had probable cause to believe a felony had been committed and that the person arrested committed it." (citations omitted).

The Supreme Court in *Brinegar v. United States,* 338 U. S. 160, 174-175, distinguished the standards and latitude allowed in passing upon the distinct issues of probable cause and guilt. It said that if the standards applicable to guilt were to be imposed in determining probable cause for arrest or for search and seizure, "few indeed would be the situations in which an officer, charged with protecting the public interest by enforcing the law, could take effective action toward that end." In discussing probable cause, it said, at page 175:

> "In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of every day life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved."

We think, on the factual circumstances surrounding the arrest of the appellant, that the officer had probable cause to make the arrest. Considering facts within the knowledge and senses of the arresting officer—that it was 3:45 A.M.; that Vucci and Hernandez did not live in the area; that there was no legitimate reason apparent to the officer for the car to have been parked where it was and for Vucci and Hernandez to leave it; that Vucci and Hernandez ran from the vicinity of the school when a police car went into the school grounds (Mosley saw the police car approach and saw a light in the school area which he thought was a police search light); that Hernandez was wearing or carrying a white glove; that the appellant was attempting to start the car as Vucci and Hernandez entered it; that the time Vucci and Hernandez were away from the car was sufficient for them to break into the school; that Hernandez's method of operation in a previous offense was similar— the renting of a motel room, the use of tools purchased at Drug Fair, the choice of nights, Friday—we feel that the officer had reasonable grounds to believe that the school had been broken

into and that Vucci and Hernandez had committed the break-
ing. If there were reasonable grounds for him to believe the
school had been broken by Vucci and Hernandez, there were
reasonable grounds for him to believe that their intent was to
steal goods of the value of $100 or more. Intention may be in-
ferred from the circumstances. *Johnson v. State,* 5 Md. App.
540. And if there were reasonable grounds for him to believe
that Vucci and Hernandez had committed a felonious breaking,
there were reasonable grounds for him to believe that the ap-
pellant was the "wheelman" of the getaway car and thus a prin-
cipal in the crime.[5] We hold that the arrest of the appellant was
legal,[6] and that the evidence seized by the search incident there-
to was properly admissible.

## THE SUFFICIENCY OF THE EVIDENCE

The argument of defense counsel on the merits was not tran-
scribed nor does it appear from the record that the State argued
on the merits. The court did not discuss the evidence or the law
in rendering its verdict of guilty. We think it clear, however,
that the conviction was based on that part of Md. Code, Art.
27, § 490 which provides that a person shall be deemed a rogue
and vagabond if he "shall be apprehended having upon him any
picklock, key, crow, jack bit or other implement, at places and
under circumstances from which an intent may be presumed
feloniously to break and enter into any storehouse * * *." See
*Thomas v. State,* 1 Md. App. 528, 532. When the appellant was
apprehended he had "upon him" implements—chisels, punches
and a hammer—within the meaning of the statute. See *Brown*

---

**5.** A school is a storehouse within the meaning of Art. 27, § 32.
*Springfield v. State,* 238 Md. 611. See *Buckley v. State,* 2 Md. App.
508. Anyone who is actually or constructively present, aiding or
abetting the commission of a felony, is a principal. *Vincent v. State,*
220 Md. 232; *Thomas v. State,* 2 Md. App. 502.

**6.** Probable cause must be determined on the facts and circum-
stances of each case. *Brown v. State,* 5 Md. App. 367, where the
arresting officer had no probable cause to believe that a breaking
had occurred or that some other felony had been committed, is
factually distinguishable. *McCarthy v. State,* 2 Md. App. 400 and
*Randolph v. State,* 1 Md. App. 441 are also to be distinguished on
their facts.

*v. State,* 4 Md. App. 261; *McGhee v. State,* 4 Md. App. 256; *Farley v. State,* 3 Md. App. 584; *Woodell v. State,* 2 Md. App. 433; *Day v. State,* 2 Md. App. 404. The intent from the possession of the tools did not have to be presumed as the appellant told the police that the intention was to break into Richard Montgomery School and we think it a rational inference that such breaking and entering would be with the intent to steal goods of the value of $100 or more; thus the intent would be felonious. Such intention may be inferred from the circumstances. *Johnson v. State, supra.* Therefore the judgment of the lower court on the evidence was not clearly erroneous and we may not set it aside. Md. Rule 1086.

We distinguish *Crossland v. State,* 252 Md. 70. There the State argued that the defendant was a rogue and vagabond both because he was found in or upon a dwelling house with an intent to steal goods and because at the time of his apprehension he possessed an implement from which a felonious intent could be inferred. The Court rejected both contentions because the crime of larceny was a *fait accompli* (there was no evidence of a breaking). It said that the placing of the stolen article on the street by the defendant and his walking away from it, indicated an attempt to avoid apprehension for the *completed* crime. "Accordingly the possession of the screwdriver under those circumstances would not justify an inference that he possessed it to 'break and enter' any dwelling house." And his walking *out* of the dwelling house with the stolen goods was not evidence from which it could be inferred that he was there with an intent "to steal." "It was evidence that he *had stolen* the chattels and his prior intent 'to steal' necessarily did not exist at that time." Here there was evidence that the intent was to break and enter the school. The crime was not consummated and it does not necessarily follow that because the breaking had at that moment been prevented by the appearance of the police, that the intent no longer existed.

*Judgment affirmed; appellant to pay costs.*