# JAMES JOSEPH KNIGHT *v.* STATE OF MARYLAND

[No. 423, September Term, 1968.]

*Decided June 23, 1969.*

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*James F. Garrity* for appellant.

*John J. Garrity, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Philip E. Epstein, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

James Joseph Knight, the appellant, was convicted in the Criminal Court of Baltimore of being a rogue and vagabond and of possessing narcotic paraphernalia. Judge David Ross, presiding without a jury, sentenced him to consecutive two year terms. Knight contends articles seized at the time of the arrest were improperly admitted into evidence, and the evidence was not sufficient to support the verdicts.

At approximately 1:30 a.m. on July 14, 1968, Melvin Anderson secured a shoe repair shop which he operated in Baltimore City, and prepared to ride home with another companion, Thomas Jenkins. As they were walking to the car, parked thirty feet away, Anderson noticed two men looking in the window of a restaurant which was located adjacent to the shoe store. As there had been numerous storehouse breakings in the vicinity, he called his companion's attention to their actions. After deciding to observe the two men further, Anderson and Jenkins circled the block, alighted from the vehicle, and took up a position which allowed them to observe both men, one of whom was later identified as Knight, standing on a nearby street corner. After Knight's companion walked from the street corner into an alley located behind the shoe store, Knight also disappeared into the alley. Anderson then decided to go around to the front of his store while his companion, Jenkins, was to go to the rear of the store. As Jenkins reached the alley, he observed Knight in the enclosed backyard of the shoe shop near the rear entrance. Jenkins testified that he asked Knight what he was doing back there, and he replied, "I am not doing anything. I am just coming from work." Jenkins

284

then replied, "Something is going on funny here. You better come with me around the front and check with Mr. Anderson." At about that time, Jenkins testified that he heard something that sounded to him like dishes rattling, and he thereupon grabbed Knight by the arm and escorted him to the front of the shoe shop.

Jenkins further testified that as he was escorting Knight around the alley, "Mr. Anderson ran past me going to the back of his shop. Mr. Anderson had proceeded up Fulton to go to the front door of his shop. He ran past me and said, 'Somebody is in there' . . . I kept this fellow, Knight, with me. I wasn't going to let him go. I walked him right around to the front of Mr. Anderson's shop . . . . By this time, about approximately maybe less than a minute, Mr. Anderson ran back and said, 'He got away. The fellow came through the window' ". Jenkins also testified that he observed Knight to be carrying a shopping bag, which was rolled up under his arm, "like you see people walking down the street tucking a newspaper under their arm."

Anderson testified that after he had observed the men go into the alley, he went to the front entrance of his store where he looked through a large window and noticed a man inside. Anderson stated, "After that I tried to open the door with the keys. I couldn't find the keys. I saw the fellow go out the back door. I could still see when he went out the back way, and I rushed back around the back, around the side way, and by that time Mr. Jenkins was bringing this Mr. Knight up around the corner."

Anderson testified that stock valued from $400 to $600 was in the store at the time, that a nickel coin machine was broken open, and nickels were scattered all over the floor, and that the premises had been completely secured at the time he closed the store.

After taking Knight into the store, the State's witnesses detained him until the police arrived approximately ten to fifteen minutes later. Although not the first police officer on the scene, Officer George Sheffield testified that after Anderson and Jenkins related the facts

surrounding the incident to him, which were substantially as outlined above, he placed Knight under arrest and proceeded to search him, finding a hatchet and a hammer inside of the shopping bag and also various narcotic paraphernalia inside a Pall Mall package located in his pocket. The officer stated that he charged Knight with burglary, and being a rogue and vagabond.

Detective John Sewell, of the Baltimore Police Narcotics Squad, to whom the narcotic implements had been entrusted, testified that the paraphernalia recovered from Knight consisted of two hypodermic needles, one syringe, and one bottle cap that was found by the U. S. Customs Laboratory to contain a residue of Methadone.

Knight testified that he had been in the vicinity after visiting his aunt who lived about three blocks away from the shoe repair shop, and he was on his way to his home and denied any connection with the breaking.

As to the first contention, a police officer may arrest a person without a warrant where there is probable cause to believe that a felony has been committed and that the person arrested committed the felony. *Simms v. State,* 4 Md. App. 160, 167, 242 A. 2d 185. Here, the probable cause to believe a storehouse breaking had occurred was furnished by Anderson and Jenkins. It does not matter that the crimes for which Knight was arrested were not identical to those of which he was convicted, *Simms, supra.* The arrest thus being lawful, the items seized were properly admitted into evidence.

Where information is given to a police officer by witnesses to a crime, at the scene of the crime and a few minutes after it has been committed, the standards of reliability of the witnesses are not the same as when the information is received from an informer, sometimes called a "stool pigeon." In *Taylor v. State,* 238 Md. 424, 209 A. 2d 595, 598-99, the Court of Appeals held as "reasonably trustworthy information" a description of the criminal from an unidentified eyewitness and admitted it in determining the probable cause for an arrest. The Court stated at 209 A. 2d at 599 that "it would be en-

tirely impractical and unrealistic to require the officer to stop his investigation of the crime and inquire into the witness' trustworthiness." In *Jones v. State,* 242 Md. 95, 218 A. 2d 7, 10, a policeman acting on information received from a rape victim and witnesses arrested the defendant. One witness described the accused's car. The information on which the officer acted was assimilated from the victim, as well as identified and unidentified witnesses. The Court of Appeals held that "the investigating officer cannot be expected to take the time to ascertain and make notes of the names and backgrounds of all the persons at the scene who told him what they had observed."

Knight also contends that the evidence was insufficient to support the verdicts. On the record before us, we hold that in convicting Knight, the judgment of the trial court was not clearly erroneous under Maryland Rule 1086. Although it appears to us that the two criminals were acting in unison and the crime of storehouse breaking was completed, it is apparent that they had not completed the larceny. Compare *Crossland v. State,* 252 Md. 70, 249 A. 2d 153.

*Judgments affirmed.*