## LARRY DOWNES *v.* STATE OF MARYLAND

[No. 424, September Term, 1970.]

*Decided March 16, 1971.*

444

The cause was argued before MURPHY, C.J., and ANDERSON and ORTH, JJ.

*Hersh Stein* for appellant.

*Gary Melick, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Joseph B. Harlan, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

## THE MISDEMEANOR OF BEING A ROGUE AND VAGABOND

On 13 January 1969 the Court of Appeals decided *Crossland v. State,* 252 Md. 70. On grant of certiorari it reversed a judgment of the Criminal Court of Baltimore which this Court had affirmed on direct appeal. The judgment was rendered by the lower court at a bench trial upon a verdict that Crossland was guilty of being a rogue and vagabond. Since the *Crossland* decision, many of those coming before us on direct appeal standing convicted of being a rogue and vagabond have sought to have the conviction set aside by applying the *Crossland* holding. The decision in *Crossland,* however, was upon *unusual* facts and circumstances; the Court of Appeals expressly so stated three times in its four and a quarter page opinion, 252 Md. at 73, 74 and 75. We are, of course, obliged to follow the holding of the Court of Appeals. But we are not compelled, nor are we persuaded, to enlarge that holding by applying it in cases not factually apposite.

The offense of being a rogue and vagabond[1] is prescribed by Code, Art. 27, § 490. The statute establishes alternative situations in which a person shall be deemed a rogue and vagabond:

(1) being apprehended:
   (a) possessed of implements at places and under circumstances from which may be presumed an intent feloniously to break and enter a dwelling house or storehouse; or
   (b) possessed of offensive weapons at places and under circumstances from which may be presumed an intent feloniously to assault any person; or
(2) being found in or upon any dwelling house or storehouse, or in any enclosed yard or garden or area belonging to any house, with an intent to steal any goods or chattels.

We observe with reference to (1) (a) that the *breaking and entering* of a dwelling house is felonious when done in the nighttime with intent to commit a felony (common law burglary)[2] or with intent to steal goods

---

1. The ancient English statutes described vagabonds to be "such as wake on the night and sleep on the day, and haunt customable taverns and ale-houses, and riots about, and no man wot from whence they came nor whither they go." 4 Blackstone Commentaries 169. Statute 17 Geo. II. c. 5 divided vagabonds into three classes: (1) idle and disorderly, (2) rogues and vagabonds, and (3) incorrigible rogues. There were some seventeen categories of rogues and vagabonds designated in 7 Jacobs Law Dictionary (1811), p. 326. The sixteenth, by statute 23 Geo. III. c. 88, was "All persons apprehended with any picklock or implement, with intent to feloniously break and enter any dwelling house; or with any offensive weapon, with intent to feloniously assault any person; or who shall be found in or upon any dwelling-house, outhouse, yard, area, or garden, with intent to steal." In Maryland the crime of being a rogue and vagabond was included in chapter 138, Acts 1809, which was the comprehensive act concerning crimes and punishments, see *Jackson v. State*, 10 Md. App. 337, 341, as Part VII, § 4. It was patently a legacy from 23 Geo. III. c. 88 and, in fact, from 1809 to date has had only one change of substance and that was by ch. 467, Acts 1878, which provided that the intent in (1) (a) and (1) (b) may be presumed from the place and circumstance of the apprehension. See also ch. 257, Acts 1967, and ch. 307, Acts 1968.
2. See *Jennings v. State*, 8 Md. App. 312, 318-319.

of any value, Code, Art. 27, § 30 (a). The *breaking* of a dwelling house is felonious when done in the daytime with intent to commit murder or felony therein or with intent to steal goods of any value therefrom, Code, Art. 27, § 30 (b). The *breaking* of a storehouse is felonious when done with intent to commit murder or felony therein or with intent to steal goods of the value of $100 or more therefrom, Code, Art. 27, § 32, and when chattels to the value of $5 or upwards are actually stolen, Code, Art. 27, § 33. The *breaking and entering* of any building either by day or by night is felonious when any vault, safe, or other secure place is opened or attempted to be opened by the use of explosives, Code, Art. 27, § 34. But the *breaking* of a storehouse with intent to steal goods under the value of $100 or when goods under the value of $5 are actually stolen is not felonious; such breaking is a misdemeanor under Code, Art. 27, § 342.

With reference to (1) (b), assault is felonious when committed with the intent to have carnal knowledge of a female child under the age of 14 years or with intent to rob or with intent to murder or with intent to commit a rape, Code, Art. 27, § 12. But simple assault is a common law misdemeanor, *Coleman v. State,* 4 Md. App. 386.

With reference to (2) the intent may be to commit either grand or petit larceny.

The Court of Appeals found in *Crossland* that the language used in the statute "implies the mental processes preliminary to the actual doing of or completion of a particular act." 252 Md. at 73. Thus in each of the situations contemplated by the statute an essential element is the intent *to commit* the crime designated and the beneficial and useful purpose of the statute is to give enforcement officers a tool to apprehend and suppress more aggravated criminal conduct *prior* to its actual commission. The unusual facts and circumstances in *Crossland* were that the taking of goods by Crossland and their asportation were clearly established. So larceny was not only shown to have been the reason for breaking and entering of the dwelling house and the reason for his

being in or upon the dwelling house, but the larceny was shown to have been completed. Therefore, although Crossland possessed an implement contemplated by (1) (a) it could not be presumed that he had an intent feloniously to break and enter the dwelling and although he was found in or upon the dwelling, the intent to steal contemplated by (2) was not present. This was so because the larceny was then a *fait accompli*; the possession of the implement could not show an intent to break and enter a dwelling to do an act he had already done, and his being seen walking out of the house carrying the stolen goods could not support a rational inference that he then had an intent to steal what he had already stolen and carried away. Thus the *Crossland* holding would not be applicable unless: as to situation (1) (a) the felonious act which was the intent of the breaking and entering had been consummated, the mere completion of the breaking and entering itself not being sufficient to invoke it; as to situation (1) (b) the felonious assault had been consummated; as to situation (2) the larceny had been consummated. So in *Knight v. State,* 7 Md. App. 282, 286 we held that the evidence was sufficient to sustain the conviction of being a rogue and vagabond where the storehouse breaking was completed, but the larceny was not. In *Matthews v. State,* 8 Md. App. 712, 715 we held, under the circumstances there existent, that for *Crossland* to apply the larceny must be at a practical as well as a legal end. In *Radcliffe v. State,* 6 Md. App. 285, we felt that *Crossland* did not apply because not even the breaking and entering of the storehouse was consummated. See *Hebb v. State,* 10 Md. App. 145, 150; *Johnson v. State,* 10 Md. App. 652, 665-666. Compare *Wilson v. State,* 7 Md. App. 41 in which we found that the circumstances under which the accused was found upon the dwelling house were not sufficient to show an intent to steal.

*The Instant Case*

At a bench trial in the Criminal Court of Baltimore

Larry Downes was found guilty of being a rogue and vagabond and with possession of narcotic paraphernalia.

Evidence adduced by the State tended to show that Officer James Archey of the Baltimore City Police Department, Canine Squad, received a call about 2:00 A. M. on 8 July 1969 over his police radio that a breaking and entering was in progress at 2321 Reisterstown Road, a beauty shop. Attempting to go to the rear of that address he drove onto Orem Road from Reisterstown Road and stopped by an alley running in the rear of 2321 Reisterstown Road. He saw appellant about 50 to 70 feet up the alley. As he was getting out of the car he heard appellant holler something and within seconds thereafter two other males ran out of the rear of 2321 Reisterstown Road, coming through a gate in the fence about 4 feet high. They were heading for an alley intersecting the alley in the rear of the storehouse. The officer called for them to stop and when they kept running he sent his dog who caught the first one he came to, John Robert Shaw.[3] The third person escaped. The officer walked up to Shaw who was being held by the dog and started to search him. Shaw pulled a knife with his left hand and the dog grabbed his left arm and knocked Shaw down. Shaw dropped the knife and the officer recovered it. It had "like dust on it."

Officer Edward Hamilton of the Baltimore City Police Department also responded to the radio call, arriving on the scene about 30 seconds after receiving it. He met Canine Officer Archey and saw two men, one running from the rear of the beauty shop being apprehended by Officer Archey and one "walking briskly" on Orem Street. He stopped the latter; it was appellant.[4] He was carrying a little paper bag. It contained a hypodermic syringe and needle. The officer went to the rear of the beauty shop and "found that the screen on the back window had been

---

3. Shaw, jointly indicted and jointly tried with appellant, was also convicted of being a rogue and vagabond.

4. Appellant gave the police the name of Bernard Carter but he was identified as Larry Downes by his fingerprints.

pulled up." On the ground below the window was a white substance. "[I]t was some type of a cement, or something that was holding a bar, a metal bar going across the window into the bricks, and this had been scraped away or chopped away, and that is why it was all over. * * * Well, we figured that they used a knife to scrape the cement away." A mustard colored hat was on the ground under the window. About an hour earlier the officer had seen Shaw outside a tavern. He was wearing a hat like the one found on the scene. Hamilton said that no one physically got into the storehouse and nothing inside was missing.

Miss Edith Tucker, the manager of the beauty shop, testified that when she closed the shop after 7:00 P. M. on 7 July the window was in good condition. She was called to the shop by the police about 4:00 A.M. the next morning and the screen on the window had been torn out and a bar had been removed. She had not given anyone permission to enter the premises by means of the window.

At the close of the evidence offered by the State the court granted a motion for judgment of acquittal as to the first count in the indictment charging storehouse breaking with intent to steal goods of the value of $100 and upwards because the State had not shown that the storehouse contained anything of value. But see *Ridley v. State,* 228 Md. 281; *Radcliffe v. State, supra; Johnson v. State,* 5 Md. App. 540.

Shaw testified in his own behalf. He denied the hat was his, denied he had a knife and denied being on the premises or in the yard of the beauty shop. He claimed his correct name was Joseph Shaw. Appellant did not desire to testify.

The court found that Shaw was apprehended in possession of an implement (the knife) at a place and under circumstances from which may be presumed an intent feloniously to break and enter the beauty shop. In so finding it noted the evidence with respect to the tampering with the window and the cement dust and that the knife was covered with dust. It found that appellant

was the lookout man. He was "not within the enclosure, as such, but certainly was close enough to it so he was another one of the persons participating in this crime." It also found as a fact that appellant was in possession of narcotic implements.

Appellant contends that the conviction of rogue and vagabond was improper because the crime of breaking the storehouse had been completed, relying on *Crossland*, and because the evidence was not sufficient to sustain the conviction. Whether or not the breaking of the storehouse had been completed, it is clear that no felony intended to be committed by the breaking had been consummated. Thus *Crossland* is not applicable. The evidence was clear that Shaw was apprehended having an implement upon him and it was a rational inference from the place and the circumstances of the apprehension that he had an intent feloniously to break and enter the beauty shop. The evidence was also sufficient in law for the trier of fact to find that Shaw was upon the storehouse with an intent to steal. The finding by the court that appellant was a lookout for Shaw was not clearly erroneous, Maryland Rule 1086, and as such participant appellant shared Shaw's criminal purpose and was properly chargeable with having "upon him" the implement actually found on Shaw. And since both were principals in the offense, Shaw's being found upon the storehouse with intent to steal could be imputed to appellant. *McGhee v. State*, 4 Md. App. 256, 260-261. See *Wright v. State*, 222 Md. 242, 247. We hold that the evidence in law was sufficient to sustain appellant's conviction of being a rogue and vagabond.

We observe that the law of merger is not applicable because there was no conviction of storehouse breaking. *Dorsey v. State*, 9 Md. App. 80; *Tyler v. State*, 5 Md. App. 158.

Appellant also urges that the evidence was not sufficient to sustain the conviction of possession of narcotic paraphernalia. There was evidence that the bag containing a hypodermic syringe and needle were in ap-

pellant's possession. The court found that the syringe and needle were "narcotic paraphernalia." We cannot say that the court's judgment that the hypodermic syringe and needle were "adapted for the use of habit-forming drugs by hypodermic injections" and were possessed by appellant "for the purpose of administering habit-forming drugs" was clearly erroneous. In the circumstances this was a rational inference. *Williams v. State,* 5 Md. App. 450.

*Judgments affirmed.*