# LARRY GALE HALL *v.* STATE OF MARYLAND

[No. 339, September Term, 1973.]

*Decided February 14, 1974.*

The cause was argued before ORTH, C. J., and MOYLAN and MENCHINE, JJ.

*R. Roland Brockmeyer* for appellant.

*Mary Elizabeth Kurz, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Donaldson C. Cole, Jr., State's Attorney for Cecil County,* on the brief, for appellee.

MOYLAN, J., delivered the opinion of the Court.

No proposition is more bedrock than that a crime consists of an *actus reus* and a *mens rea* and that the two must coexist. Where there is no coincidence in time between the guilty act and the guilty mind, there is, by definition, no crime. Conversely and just as inexorably, where there is such temporal unity, there is crime. The overlooking of this fundamental converse has led many defendants to an overly broad reading of *Crossland v. State,* 252 Md. 70, 249 A. 2d 153.

The appellant, Larry Gale Hall, now joins that legion. His peers in Cecil County convicted him of 1) roguery and vagabondage, 2) grand larceny and 3) assault. The sentence for being a rogue and vagabond was made concurrent with the larceny sentence. He protests, *inter alia,* that the alleged special *mens rea* of "an intent to steal any goods or chattels" had already lapsed into history when the alleged *actus reus* of "being found in or upon any dwelling house" occurred, thereby dooming his conviction to the fate of *Crossland.* He protests in vain.

In *Downes v. State,* 11 Md. App. 443, 445, 274 A. 2d 663, Chief Judge Orth pointed out that Art. 27, § 490, establishes three distinct and alternative situations under which a person might be deemed a rogue and vagabond:

(1) being apprehended:

    (a) possessed of implements at places and under circumstances from which may be presumed an intent feloniously to break and enter a dwelling house or storehouse; or

    (b) possessed of offensive weapons at places and under circumstances from which may

be presumed an intent feloniously to assault any person; or

(2) being found in or upon any dwelling house or storehouse, or in any enclosed yard or garden or area belonging to any house, with an intent to steal any goods or chattels.

In the case at bar, we are dealing exclusively with situation (2). Stripped to essentials, the following facts were fairly inferable from the evidence:

The appellant and two confederates, Albert David Skull * and John Henry Barnett, went in a stolen automobile to the trailer residence of David Leigh Crane at shortly before 6 a.m. on January 1, 1973. Although the appellant had known Crane for some eight years, Crane was not at home and had not given the appellant or anyone else permission to enter his trailer. The appellant knocked loudly and called out Crane's name, receiving no reply. A pane of glass near the door was shattered, leaving a hole large enough for a man's arm to enter. Whether the appellant reached in and unlocked the door or whether the door was already unlocked is in some dispute, but, in either event, the appellant and Barnett entered. Skull remained outside in the automobile.

To reach the Crane trailer, one must leave State Highway 272 and travel up a dirt road, passing en route the residence of James Ellwood Racine, who had leased the trailer in question to Crane. The pre-dawn visit of the appellant and Barnett to the trailer was interrupted by the unexpected arrival of James Racine and his son Eugene. They had both been awakened by the rapping upon the door and the sound of shattering glass. They saw the lights of the strange automobile in front of the Crane trailer. The Racines positioned a truck athwart the dirt road to block egress by the vehicle of the intruders and then moved in for closer investigation. In some confused sequence, a loaded shotgun, the property of Crane, was fired from inside the trailer by Barnett. The two Racines returned pistol fire. Skull, still unobserved on the outside of the trailer, hit the ground and

---

* Skull was a State's witness.

slithered beneath a third parked vehicle where he remained until apprehended by State troopers some short time afterward.

The appellant made a run from the trailer to his automobile, shielding himself with a loaded duffle bag belonging to Crane. The bag was thrown into the rear of the car. Barnett made his dash for the car simultaneously, crawled into it and continued firing toward the Racines. The appellant and Barnett attempted to make a getaway in the car but were unable to get around the truck placed across their path. They then abandoned the vehicle and fled overland.

Barnett was arrested on a public road a short time later. He was carrying both a shotgun and a knife belonging to Crane. The shotgun was valued by Crane at $75 and the knife, at $15. From the abandoned automobile, there was recovered a .22 caliber rifle owned by Crane and valued by him at $50, the duffle bag already referred to, and a radio, which was not in the duffle bag and which was identified by Crane as his property. He placed a value on the radio of $20.

The appellant was arrested at approximately 8:15 that evening walking northbound on State Route 272. He points out that at the time of apprehension, he was possessed of neither burglar's tools nor offensive weapons. That fact is irrelevant since we are dealing with rogue and vagabond situation (2) which requires no such possession, in contradistinction to rogue and vagabond situations (1) (a) and (1) (b), which do establish such respective possessions as necessary elements of the crime.

The appellant also stresses, to no clear end, that he was "apprehended" some 12 hours after the alleged offense and "between a mile and one-half to two miles away." He seems to be groping for the point made by a similarly situated defendant in *Thomas v. State*, 1 Md. App. 528, 231 A. 2d 915, at 1 Md. App. 531:

> "The thrust of the appellant's argument in support of his first two contentions is that since the appellant was not physically apprehended by the

police in or upon the dwelling house he is not within the provisions of the statute."

In the *Thomas* case, as here, the defendant was not physically apprehended in or upon the dwelling. He was observed initially suspiciously near the house and later seen by the police fleeing the general vicinity. His fingerprint, however, was found inside the house. We there pointed out, at 1 Md. App. 533, that there is no requirement that a defendant be physically apprehended in or upon the dwelling in order to establish his earlier presence in or upon the dwelling:

> "[W]e reject the appellant's construction of the statute that a person must be physically apprehended in or upon the dwelling to prove the commission of the offense. We do not agree that this part of the statute requires a person to be arrested flagrante delicto. We deem it significant that with respect to the offense designated by the first part of the statute, the words 'shall be apprehended' are used, while with respect to the third part of the statute, here considered, the words 'shall be found' are used with no reference to 'apprehended.'"

The central thrust of the appellant's argument, however, is that proof (in this case amounting to conviction) of consummation of the intended larceny precludes, under *Crossland,* conviction for the essentially inchoate crime of roguery and vagabondage — subvariety (2). That is not the holding of *Crossland.* *Crossland* dealt with a very limited and extraordinary factual situation. (It thrice referred to its "unusual circumstances" or "unusual facts.") The two-witness, non-jury trial in *Crossland* was summary in the extreme; the testimony consumed but thirteen pages of transcript. An alert officer first noticed Crossland "walking out of the front door of a dwelling house" carrying "a portable record player in one hand and a transistor radio in the other." He did not give immediate pursuit but checked out the dwelling, learning that a larceny had been

committed. Taking up the trail, by taxicab, the officer apprehended Crossland some six minutes later, some three blocks away, possessed of a screwdriver.

*Crossland* considered two distinct subvarieties of roguery and vagabondage — (1) (a) being apprehended possessed of burglar's implements from which might be presumed an intent feloniously to break and enter a dwelling and (2) being found in or upon any dwelling with an intent to steal any goods or chattels. It pointed out, quite properly, that the respective "intents" had to correspond in point of time with the respective guilty acts of "being apprehended possessed, etc." and "being found in or upon, etc." It simply pointed out that one can no longer "intend" to do an act which has already been done — that once intended acts are *faits accomplis*, the intent can no longer endure. *Crossland* simply applied to the limited fact situation before it the fundamental principle that an *actus reus* and a *mens rea* must coincide to establish a crime. *Crossland* must be carefully read in the context of its very limited fact situation, however.

With respect to rogue and vagabond situation (1) (a), *Crossland* merely held that when the defendant there was "apprehended" possessed of a burglarious implement, there no longer existed an intent "to break and enter" the dwelling which had already been successfully broken and enterⅽd some six minutes before. *Crossland* did not consider, and therefore did not preclude, the possible "intent" to break and enter some other dwelling at some later time. That possible finding had not been made by the lower court and that theory of culpability was not argued by the State. *Crossland* did not address itself in any way to such a hypothetical and cannot be read as intimating anything with respect thereto. Indeed, were such a finding of fact to be made, it seems self-evident that an *actus reus* and a *mens rea* would exist concomitantly, thereby constituting an act of crime.

Similarly with respect to rogue and vagabond situation (2), *Crossland* pinpointed the *actus reus* of "being in or upon" the dwelling to the moment when the officer observed the defendant "walking out of the front door" with the stolen

goods in hand. Under those precise circumstances, it held the larceny to have been already consummated, thereby extinguishing the intent to steal. *Crossland,* on its limited facts, did not consider, and therefore did not preclude, the logical inference from the later observation of an earlier *actus reus* at a time when the larceny had not yet been consummated and when, therefore, the larcenous intent was still operative.[1] Such a finding had not been made by the court below and such a theory was not put forward by the State. *Crossland* is, therefore, simply silent with respect to such a hypothetical. Indeed, again, if the evidence shows directly, or by reasonable inference, the coincidence in time of the *actus reus* of being "in or upon a dwelling" with the *mens rea* of "intent to steal," the conclusion seems ineluctable that the crime is established.

Nor will subvariety (2) of roguery and vagabondage merge into a consummated larceny. *Chittum v. State,* 1 Md. App. 205, 212-213, 228 A. 2d 628. It contains an element — being in a particular geographic spot — not contained in the crime of larceny and, therefore, it cannot merge. *Chittum,* at 1 Md. App. 210-213. See generally *Veney v. State,* 227 Md. 608, 611-614, 177 A. 2d 883. It may, of course, merge into common law burglary, statutory housebreaking or storehouse breaking, since all of the elements of the lesser crime are contained in those greater crimes, *Crossland,* at 252 Md. 74; *Chittum, supra; Manning v. State,* 2 Md. App. 177, 233 A. 2d 821; *Buckley v. State,* 2 Md. App. 508, 235 A. 2d 754; *Sparkman v. State,* 3 Md. App. 527, 533, 240 A. 2d 328; *Shifflett v. State,* 3 Md. App. 550, 554, 240 A. 2d 286; *Burton v. State,* 7 Md. App. 671, 682, 256 A. 2d 826; or even, under appropriate circumstances, with attempted burglary, housebreaking or storehouse breaking. *Hebb v. State,* 10 Md. App. 145, 150, 268 A. 2d 578. *Cf. Farley v. State,* at 3 Md. App. 584, 588, 240 A. 2d 296. Subvarieties (1) (a) and (1) (b) will not, of course, merge into such greater offenses since

---

1. Nor was *Crossland* asked to consider the possibility that although the trespassory taking had been effected, the asportation was still in progress. Its holding is, therefore, no broader than the limited issue to which it was addressed. But see the excellent analysis by Judge Thompson in *Matthews v. State,* 8 Md. App. 712, 715, 261 A. 2d 804.

they each contain an element — the possession of a burglarious implement and the possession of an offensive weapon, respectively — not contained in those greater offenses. *Farley v. State, supra,* at 3 Md. App. 588. *Cf. McGhee v. State,* 4 Md. App. 256, 259-261, 243 A. 2d 41.

Since *Crossland* was so closely confined to its own "unusual facts," its limited utility has been pointed out on a number of occasions: *Radcliffe v. State,* 6 Md. App. 285, 294, 251 A. 2d 11 (not applicable where a breaking and entering contemplated by subvariety (1) (a) had not yet been consummated, but only interrupted); *Knight v. State,* 7 Md. App. 282, 286, 254 A. 2d 379 (not applicable where a storehouse breaking had been completed, but the follow-up larceny had not yet been consummated); *Matthews v. State, supra,* at 8 Md. App. 715 (not applicable where a larceny had begun, but where the asportation was interrupted before it reached a place of safety beyond the protected premises); *Downes v. State, supra,* (not applicable where a breaking may have been completed, but where a follow-up larceny had not yet been consummated); *Holtman v. State,* 12 Md. App. 168, 171-173, 278 A. 2d 82 (not applicable where a suspect was apprehended coming out of a premises, but where the substantive crime had not been completed) and *Jett v. State,* 12 Md. App. 568, 573, 280 A. 2d 33 (not applicable where the breaking had been completed, but the follow-up larceny had not).

In pinpointing upon the time scale the *actus reus* of the roguery and vagabondage in the case at bar, it is clear that the appellant was "found in or upon" the Crane trailer by the two Racines, father and son, moments after they were awakened by the knocking and shattering of glass and the spotting of the automobile headlights in front of the trailer, let alone when the Racines approached the trailer with guns drawn. However complete the breaking and entering may have been, the intended larceny was still very much in progress. The inference was reasonable that the manifold trespassory takings had not yet been completed, let alone the asportation of the stolen goods from the trailer to the awaiting automobile. As we pointed out in *Randolph v.*

*State,* 14 Md. App. 278, 284-287, 286 A. 2d 801, although a past criminal intent cannot be imputed to a present action, the intent prevails not only while the contemplated action is in the future but also throughout the present time while such action is still operational. We there said, at 14 Md. App. 286-287:

> "The evidence in this case showed clearly that the asportation had not been completed. It permitted a reasonable inference that even the entering phase of the criminal activity had not been completed, further entries to make off with more goods being a distinctly feasible possibility. From the available facts, one could not even foreclose the possibility of a further or wider breach.

> Although a criminal intent cannot be brought forward from the past to correspond with present possession, that criminal intent nonetheless continues and prevails not only while the intended act is *in futuro* but also while it is *in praesenti.*"

The larcenous *mens rea* not yet having lapsed into history, it was still operational at that point in time where proof fixed the *actus reus.* That, by definition, constitutes the crime.

The appellant's remaining contentions give us little pause. He argues that the proof was insufficient to show that the stolen goods were of the value of $100 or more. Crane's testimony revealed a value of at least $160. The owner of property may express an opinion as to its value without qualification as an expert. *Mason v. State,* 9 Md. App. 61, 262 A. 2d 576; *Jones v. State,* 6 Md. App. 344, 251 A. 2d 46. We note, moreover, that there was no objection to the testimony concerning value. In any event, examining the testimony of the witness in the instant case, it is clear that he was testifying as to his opinion of fair market value. There was competent evidence, if believed, to establish that the market value of all the property taken was in excess of $100. *Davidson v. State,* 18 Md. App. 61, 305 A. 2d 474; *Boblits v. State,* 7 Md. App. 391, 256 A. 2d 187.

A thorough review of the evidence also makes it clear that the evidence was legally sufficient to permit the case to go to the jury. The appellant broke a window in the Crane trailer and entered the Crane trailer when its owner was absent. The jury was not required to believe his disclaimer of larcenous and burglarious intent. The evidence permitted the inference that the appellant and Barnett were acting in concert, the thefts of Barnett therefore being attributable to the appellant. The evidence was clear that the appellant ran from the trailer carrying personal property of Crane. The jury was not required to believe his disclaimer that he was using the property only as a shield. There was sufficient evidence to permit a guilty verdict as to larceny. The firing of the shotgun permitted, moreover, a verdict of assault upon the Racines, no matter whether Barnett or the appellant pulled the trigger. We see no error.

*Judgments affirmed.*